TUCKER v. RUSSELL, Governor, et al.

(Circuit Court, E. D. North Carolina.  July 20, 1897.)

1. CONSTITUTIONAL LAW—AMENDING CHARTER OF RAILROAD COMPANY—NORTH CAROLINA ACT.
   The North Carolina statute of February 25, 1897, entitled "An act to amend an act entitled an act to incorporate the Atlantic and North Carolina Railroad Company and the North Carolina and Western Railroad Company," impairs the obligations of the contract in the charter, by repealing the provision that the voting power of the state as a stockholder shall be 300, and that the voting power of each stockholder shall be ascertained by a fixed rule therein stated, and is therefore unconstitutional and void.
2. SAME—STATE AS A STOCKHOLDER—POWER TO REMOVE DIRECTORS AND PROXY.
   It is no violation of the contract between the state and the private stockholders of the North Carolina & Atlantic Railroad Company for the state

to remove, before the expiration of their terms, without the consent of the private stockholders, the directors and proxy which it is by the charter entitled to appoint.

Suit in equity by W. R. Tucker against D. L. Russell, governor of North Carolina, and others. Heard on bill and answer on a rule for injunction.

Jones & Boykin, for complainant.

P. M. Pearsall, Simmons & Ward, S. W. Hancock, and Aycock & Daniels, for defendants.

SIMONTON, Circuit Judge. The bill of complaint is filed by a private stockholder in the Atlantic & North Carolina Railroad Company. The gravamen of the complaint is the passage by the legislature of North Carolina in 1897 of two acts which, it is charged, change the original charter of the company, and impair the fundamental contract contained therein, and that, under said two acts, changes in the management and constitution of the company are threatened which will materially impair, if they do not destroy, the rights and property of the private stockholders in the corporation. The legislature of North Carolina in 1852 incorporated the Atlantic & North Carolina Railroad Company, with one terminus at Beaufort and another at Goldsboro, in that state, giving all powers necessary for constructing its railroad. The act made provision also for the subscription to its capital stock by individuals, private corporations, and municipal bodies, and invited and encouraged such subscriptions. The charter is most liberal in its terms, and the purpose of the act was to make it a part of a grand scheme of internal improvement effecting railroad communication from the Atlantic, through the center of the state, to meet the Tennessee line. The capital was fixed at a maximum of $900,000. At the session of 1854–55 an act was passed amending this charter, and by this act the state became a stockholder in the company. The capital stock was increased to $1,600,000. And as soon as it appeared to the board of internal improvement that one-third of the capital stock had been taken by solvent individuals or companies, and that $300,000 thereon was paid to the treasurer of the company, the board was authorized to subscribe, on the part of the state, for the remaining two-thirds of the stock, and to pay for it as in the act provided. Two sections of this amending act bear upon the matters in controversy in this case,—sections 3 and 4. Section 3 provides that the affairs of the company shall be managed and directed by a general board, to consist of twelve directors, eight of whom shall be appointed annually by the board of internal improvements, and may be removed in like manner, and four to be elected by the stockholders at their next general meeting, provided that no one but a stockholder holding at least five shares can serve as director. Section 4 provides a scale of voting in case a stock vote be taken in all elections and on all questions in any general meeting of stockholders; that is to say. the owner of one or two shares shall have one vote. The owner of not less than three and not more than four shares shall be entitled to two votes, the owner of not less than five or more than six shares to three votes, and so on, followed by this proviso:

"Provided, that no individual or company holding stock in said company shall be entitled to more than two hundred votes, except the state, which shall be entitled to three hundred votes, but should the state hereafter transfer any part of its stock, then its vote shall be in proportion to what may be retained as compared with the amount now represented in said corporation. The state shall at all general meetings of stockholders be represented by an agent or proxy appointed by the governor, and such agent or proxy shall be entitled in the general meetings aforesaid, to vote according to the above scale on all questions, except in the election of directors by the individual stockholders."

It may be noted here, and may save time in the further discussion of this case, that these provisions as to a scale of voting are essential provisions in the contract between the individual private stockholders and the state as stockholder. It contains mutual concessions as the consideration of the contract. The state agrees to the vote to be cast for her on the maximum of the stock, and makes provision for the reduction of that vote in certain contingencies. No provision whatever is made for an increase of her vote in any contingency. The advantages of this contract inure to, and are a part of the property of, each stockholder and each share of stock. Another thing must be noted: The act provides that at each general meeting of stockholders the state shall be represented by a proxy. The use of this imperative word renders it necessary that a state proxy be present at all such meetings. This original charter, with its amendments, under the law then existing in North Carolina, were not subject to modification, amendment, or repeal by the legislature, against the will of the stockholders.

In 1897 the legislature of North Carolina passed an act entitled:

"An act to amend an act entitled an act to incorporate the Atlantic and North Carolina Railroad Company and the North Carolina and Western Railroad Company."

This act strikes out section 4 of the former act quoted above, and inserts in lieu thereof the following:

"In all general and special meetings of stockholders the state shall be represented by an agent or proxy appointed by the governor, who shall be entitled to vote the stock of the state on all questions arising in said meeting, except in the election of directors by the individual stockholders and the presence of the state's proxy shall be necessary to constitute a quorum in said meeting. All laws and clauses of laws in conflict with this act are repealed."

Ex vi termini, this act seeks to repeal all provisions made as to the scale of voting, and destroys the equilibrium fixed in the charter. The state, desiring to go into this enterprise, invited the subscriptions of individuals, and agreed that when $300,000 of these were paid she would put in the remainder. The rights of each stockholder, and the relative rights of the state as a shareholder to the other shareholders, were fixed at the same time, as a part of the inducement to subscribe, and surely these were fundamental. The right of each stockholder is secured to him, not to be taken away or surrendered without his consent. As to this complainant, a large stockholder, this act must be inoperative if he dissents, as he does dissent, thereto. Bank v. Knoop, 16 How. 369; Railroad Co. v. Reid, 13 Wall. 264; Fry v. Railroad Co., 2 Metc. (Ky.) 314; Cook, Stocks & S. §§ 494, 500; Mor. Priv. Corp. § 645.

At the same session, in 1897, the legislature of North Carolina

passed another act, entitled "An act to restore to the state of North Carolina the control and management of the Atlantic and North Carolina Railroad." Strictly speaking, this is not an act amending the charter of this railroad company. It is more in the nature of a bill of pains and penalties. In it the state, as sovereign, makes provision for the protection of her interests as a shareholder in a private corporation. The act provides a speedy mode and a special tribunal for ascertaining the necessity for such protection, and a sort of legislative execution for the enforcement of its conclusions. The first section of this act provides that whenever it appears to the satisfaction of the governor that the proxy or directors heretofore or hereinafter appointed to represent the interest of the state in this railroad company have been in any particular unfaithful or negligent in the discharge of their duties to the state, or have done or suffered any act to be done by the stockholders or directors in said company, the intent, purpose, or effect of which was to lessen or impair the rights of the state as a majority stockholder in the company, given either by its charter or by-laws, or deprive or take away its right of control through the board of directors in the management or control of the company, or if the governor becomes satisfied that, having so acted negligently and unfaithfully, the said proxy or said directors shall continue in said dereliction of duty, it is made the duty of the governor and the board of internal improvements forthwith to remove said proxy and directors, and appoint others in their stead, who shall at once enter on their duties, and the directors, or any two of them, shall call a meeting of the directors, and elect a president, who shall be in full charge. Any officer, agent, or employé of the company who shall refuse to turn over and deliver to said president the property, books, and records of the company shall be guilty of a misdemeanor, and on conviction be fined or imprisoned. The second section is to the same effect. The third section provides that in case of the refusal of any officer, agent, or employé to turn over the property, books, and records, and in case any officer, agent, attorney, or stockholder shall, by litigation or otherwise, obstruct, retard, or in any way interfere with the organization of the new board of directors, or with the prompt delivery of the property, etc., so that the road might be involved in litigation, it is made the duty of the governor, through such persons as he may designate, to institute proceedings in the name of the state or otherwise, as he may be advised, in the superior court of any county through which the road runs, for the possession of the road; and it is made the duty of the judge to appoint a receiver to take possession of said road and to manage the same until, in the judgment of the court, the state is restored to her control in the direction of the affairs of the company.

The bill, as has been seen, is filed by a private stockholder. He makes defendants to the bill D. L. Russell, governor, Z. B. Walser, attorney general, the board of internal improvements of North Carolina, a body corporate, and Robert Hancock, Esq., and seven other gentlemen, who have been appointed directors in behalf of the state in this corporation, and the railroad corporation itself. The bill sets out in detail the original and amended charter of the company,

and the two acts of 1897 above referred to, and charges that they are in violation of right and unconstitutional; that their enforcement destroys the property rights of the private stockholders; that the company has been and is perfectly solvent, and under the recent administration was prosperous; that now the penalties of the act of 1897 are threatened against any stockholder who resists its enforcement. It charges political motives in the passage of the act, especially on the part of Mr. Hancock. The bill concludes with prayer for process, and for an injunction (1) that the said governor, and any person or persons designated by him for the purpose of instituting proceedings under section 111 of the act of 1897, be restrained from suing for the possession of the said railroad, or for the appointment of a receiver to manage and continue the same under the provisions of said section; (2) that the said governor be restrained from appointing the state proxy as authorized by the act of 1897, ratified 25th February, 1897, without the concurrence of the board of internal improvements as the charter requires, and that the said defendants the said directors and governor be, restrained from seeking to enforce the provisions of said act ratified 25th February, 1897, in any meeting. for whatever purpose it may be called; (3) that the said acts of 1897 be declared unconstitutional and void. The bill ends with a prayer for general relief. An amendment of the bill states that the private stockholders are enjoined from holding any meeting of the company.

The defendants, in response to a rule for that purpose, have shown cause, by answer, why the prayer of the bill be not granted. It appears from this return that at the time of the passage of the acts of 1897 there were a board of directors, a president, and a state proxy for the Atlantic & North Carolina Railroad Company; that after the passage of these acts this board of directors, as well as the proxy, were removed, and Mr. Hancock and his board of directors were appointed; that the old board acquiesced and surrendered; and that when this bill was filed the new board was in actual and peaceable possession. The reasons given for the removal of the old board and of the proxy were these: The private stockholders, anticipating some change in the state's representation in the company, had been splitting up the shares, and putting them in various names, thus taking advantage of the result of the scaling provisions of the charter, which gave greater voting power to the small shares. To aid in accomplishing the result sought,—increase of power in private stockholders,—the provision of the by-law which required the presence of the state proxy in forming a quorum at meetings was repealed. A large proportion of the power of the president was taken away, and vested in a finance committee of the board. The answer also charges misconduct in other respects on the part of the old board, justifying its removal.

With regard to the policy under which this railroad company is administered, the wisdom or unwisdom of its management, the dereliction of duty on the part of any of its officers or employés, this court can have no concern. These are corporate acts, and, if done under regularly constituted authority, must be corrected, if correc-

tion be needed, by the corporation itself.     Our sole duty is with the legal points made.     With regard to the general purpose of the act to restore to the state the control of and management of the Atlantic & North Carolina Railroad Company, I am not prepared to say that it is in conflict with the constitution of the United States.     The contract in the charter between the state and the other stockholders was that they should put in a certain sum of money, and that the state should put in a certain other sum; that on the board of directors the state should appoint a certain number, the private stockholders for themselves appointing the remainder; that the voting power of the state was fixed at a certain figure; and that the voting power of each private stockholder should be ascertained according to a fixed rule.     These were mutual covenants looking to the administration of the corporation, and securing in advance the rights of subscribers to its stock.     They cannot be changed by one of the parties, cannot be affected by legislation on the part of the state, without impairing the obligation of the contract.     But when it comes to the question how each stockholder should vote, in person or by proxy, this was left to himself.     The proxy could be appointed or removed at pleasure.     To say that the state, which can only act through a proxy, could not remove him, however incompetent or unfaithful or distasteful he might be, would subject the state to a disadvantage under which no other stockholder labored.     So also with the directors.     The eight directors are named by the state, and in their selection the private stockholders have no voice whatever.     They act for the state, representing her interests in a private corporation.     Under our system of government, the power that appoints, as a general rule, has the right to remove.     But be this as it may; assume that, during their term of office, directors could not be removed; this is their personal right. But no such controversy exists here.     Whatever rights the old directors had, they have voluntarily surrendered them, and acquiesced. The new board are peaceably in possession, and their right of possession is not challenged.

With regard to so much of the act as provides for the appointment of a receiver, as an abstract question, much could be said.     It comes perilously near confounding the legislative department with the judicial department.     If the legislature can usurp the discretion of a judge, and instruct him, in a given case, to pursue a given course, it can by degrees take within its control other and more important judicial functions.     But there is at present no suit pending under this section, none threatened.     The necessity for such suit, the prospect or probability of such a suit, do not exist, may never exist.     The preventive process of this court cannot meet such a case.     Nor can the court decide a legal principle upon which it cannot make a practical application.     Williams v. Hagood, 98 U. S. 72.     It can only consider the existing facts before it, and upon such facts pronounce the law and apply the remedy.

From what has been said it follows: That the first prayer of the bill for an injunction cannot be granted, as there is no suit, or threat of suit, or prospect of a suit for the possession of this railroad by the governor, or by any one designated by him.     On the contrary, the oc-

casion for such a suit cannot arise, as the new board are in full possession, the old board having surrendered, and neither the complainant nor any one else asks that they be removed. That the second prayer for an injunction against the appointment of a proxy in behalf of the state cannot be granted, as the former proxy has resigned and vacated the office, because the charter makes it imperative that the interest of the state be represented by proxy at all general meetings of the company. The fourth section of the amended charter gives the appointment of the proxy to the governor. That so much of the prayer for injunction as seeks to prevent an enforcement of the act of 25th February, 1897, entitled "An act to amend an act entitled an act to incorporate the Atlantic and North Carolina Railroad Company and the North Carolina and Western Railroad Company," or to adopt and accept the same without the consent of the private stockholders, should be granted. Let an injunction be prepared in accordance with this opinion. The bill, as against D. L. Russell, governor, Z. B. Walser, attorney general, and the board of internal improvements, is dismissed. Let it be retained as to all the other parties.