**ST. REGIS CANDIES, Inc., et al. v. HOVAS et al. (No. 9055.) ***

Court of Civil Appeals of Texas. Galveston. June 8, 1928.

Rehearing Denied July 12, 1928.

1. **Corporations** ⬠29(1)—Action held not attack on corporation's charter, maintainable only by state, but one to enjoin its unlawful destruction, properly brought by stockholder for self and corporation.

Action by holder of majority of class A stock, for himself and in behalf of the corporation, to enjoin proceedings under a purported amendment of the Constitution and by-laws at-

tempted in violation of the provision thereof, limiting the voting privilege to class A stock, is properly brought by plaintiff, not being one attacking the charter, which can be brought only by the state, but one to enjoin the unlawful destroying of the charter.

2. **Corporations ☞197—Charter and by-laws limiting voting privilege to certain class of stock constitutes contract binding on stockholders.**

The provision of charter ·and by-laws of corporation limiting the voting privilege to one class of stock constitutes a contract binding on the stockholders.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by the St. Regis Candies, Inc., and another against S. N. Hovas and others. From a judgment for defendants, plaintiffs appeal. Reversed and remanded, with instructions.

For answers to certified questions, see 3 S.W.(2d) 429.

Baker, Botts, Parker & Garwood, H. M. Garwood, Jas. L. Shepherd, Jr., S. H. German, Boyles, Brown & Scott, Edward S. Boyles, P. N. Fahey, and J. T. Scott, Jr., all of Houston, for appellants.

Allen Hannay and Fulbright, Crooker & Freeman, all of Houston, for appellees.

LANE, J. On and prior to the month of January, 1926, Paul Xanthull was the sole owner of a prosperous business which he had successfully conducted for a considerable time in the city of Houston. There had been some negotiations looking to admitting R. P. Donigan and John G. Manison to a part ownership of this business, and later these negotiations contemplated admitting also P. H. Donigan and S. N. Hovas. Pursuant to these negotiations, on January 11, 1926, Paul Xanthull, S. N. Hovas, R. P. Donigan, P. H. Donigan, and John G. Manison associated themselves together for the purpose of forming a corporation under the laws of Texas, executed the application therefor, and filed the same in the office of the secretary of state, thus bringing into being the corporation known as St. Regis Candies, Inc. This charter is in the ordinary form of charters for private corporations in this state, except two paragraphs thereof, which are as follows:

"6. The amount of capital stock is one hundred twenty-five thousand dollars ($125,000.00), divided into twelve hundred and fifty (1,250) shares of one hundred dollars ($100) each, all of which capital stock has been subscribed, and one hundred twenty-one thousand dollars ($121,000.00) paid in, as per affidavit attached hereto.

"7. The capital stock of this corporation shall be divided into two classes, one thousand (1,000) shares thereof being known as class A stock, and two hundred fifty (250) shares thereof being known as class B stock. The class B stock shall be distinguished from class A stock, in that it shall have no voting privileges or power, shall have no right to participate proportionately in future increases of capital stock of this corporation, and shall be subject to such conditions, restrictions and limitations as may be imposed by the by-laws of this corporation. In other instances class B stock shall have full rights, privileges, and power with class A stock."

Of the class A stock, Xanthull subscribed and paid for 51 per cent., S. N. Hovas for 22 per cent., R. P. Donigan for 15 per cent., P. H. Donigan for 5 per cent., and John G. Manison for 7 per cent. And the class B stock was subscribed for as follows: By Xanthull, 40 shares; S. N. Hovas, 100 shares; R. P. Donigan, 50 shares; P. H. Donigan, 40 shares; and by John G. Manison, 20 shares. All of such class B shares were fully paid for except the 40 shares subscribed for by Xanthull.

On January 14, 1926, the first meeting of stockholders of said corporation was held at the office of the company in the city of Houston. All stockholders, with the exception of P. H. Donigan, were present. At that meeting, the charter of the corporation was read and approved, and a copy of same attached to the minutes of the meeting. At said meeting, by-laws of the corporation were unanimously adopted by all the stockholders present. Later P. H. Donigan approved and ratified the minutes of said meeting. The provisions of the by-laws thus adopted which are pertinent here are as follows:

"Article II.—Capital Stock.

"Section 1. The amount of the capital stock shall be $125,000.00, which shall be divided into one thousand (1,000) shares of class A stock, and two hundred and fifty (250) shares of class B stock, each of the par value of $100.00.

"Section 2. Class B stock shall be distinguished from class A stock in that it shall have no voting privileges or power, shall have no rights to participate proportionately in future increases of the capital stock of this corporation, and shall be subject to such conditions, restrictions, and limitations as may be imposed by these by-laws. In all other instances class B stock shall have full rights, privileges, and power with class A stock.

"Article III.—Stockholders' Meeting.

"Section 1. An annual meeting of the stockholders shall be held at 8 p. m. on the third Wednesday in January of each year, at the principal office of the corporation, or such other place as may be designated in the notice. Provided, however, that whenever such a day shall fall upon a legal holiday the meeting shall be held on the next succeeding business day. At such meeting the class A stockholders shall elect directors to serve until their successors shall be elected and qualified.

"Section 2. A special meeting of the class A stockholders to be held at such place as may be

designated in the notice, may be called at any time by the president, and in his absence by either of the vice presidents. It shall be the duty of the president or the vice president to call such a meeting whenever so requested by stockholders holding 50 per cent. or more of the class A capital stock."

"Section 5. Every stockholder shall have the right to vote in person or by proxy for the number of shares of class A stock held by him, for as many persons as there are directors to be elected. No cumulative voting for directors shall be permitted. Any director may be removed at any time with or without cause or notice, by the vote of the majority in interest of class A stock.

"Section 6. At every meeting each stockholder shall be entitled to cast one vote for each share of class A stock held in his name, which vote may be cast by him either in person or by proxy. All proxies shall be in writing, and shall be filed with the secretary and by him entered of record in the minutes of the meeting.

"Section 7. Each stockholder holding in his name one or more shares of class B stock shall be entitled to participate in all regular and special meetings of the stockholders, but shall not be entitled to vote thereat for directors or upon any question coming before the meeting.

"Section 8. A quorum for the transaction of business at any such meeting shall consist of a number of members representing a majority of the shares of Class A stock issued and outstanding; but the stockholders present at any meeting, though less than a quorum, may adjourn the meeting for a future date."

"Article XV.—Directors.

"Section 1. The business and property of the corporation shall be managed by a board of 3 to 5 directors, who shall be elected by the stockholders holding class A stock. This number shall be determined from time to time by the said class A stockholders. Each director shall be a class A stockholder, and shall receive such compensation for his services as a director, as may be fixed by the class A stockholders. A transfer by a director of all of his class A stock in the corporation shall operate as a resignation of his office.

"Section 2. Directors shall be elected for a period of one year, or until such time as their successors may be elected and qualified, subject to section 5, article III, hereof."

"Article VII.—Amendments.

"Section 1. Amendments to these by-laws may be made by a vote of the class A stock issued and outstanding at any annual stockholders' meeting, or at any special stockholders' meeting, when the proposed amendment has been set out in the notice of such meeting."

"Article V.—Officers."

"Section 2. The president shall preside at all directors' and stockholders' meetings, shall have general supervision over the affairs of the corporation and over the other officers, shall be ex officio member of all committees, shall employ and discharge all clerks, employees, and agents of the corporation, shall sign all stock certificates and written contracts of the corporation, and countersign all checks, and shall perform all such other duties as are incident to his office.

In case of the absence or disability of the president, his duties shall be performed by the vice president in their order."

At such meeting all five stockholders were elected directors, while Xanthull was elected president and authorized to manage the affairs and business of the corporation. Under the agreements of the parties, certificates of stock were issued to and accepted by the several subscribing stockholders in accordance with the classification provided for in the charter and by-laws.

Under the agreements of the parties, Xanthull took charge of the business, managed and controlled its affairs, and under such management the business of the corporation was extended and proved profitable. Such management and control continued undisturbed until the 12th day of January, 1927. On the date last mentioned, Hovas, Manison, and the two Donigans, purporting to act as members of the board of directors and as a majority of the stockholders, assumed the authority to call, and they did call and give notice of, a special meeting of the directors to convene at the law office of Fulbright, Crooker & Freeman, in the city of Houston, at 7:30 p. m., January 13, 1927, the designated purpose of which was stated as follows:

"For the purpose of altering, changing, and amending the by-laws of St. Regis Candies, Inc., to wit: From article 1, section 1, to article VII, section 1, both inclusive, and to revoke the authority of the president, if any he has, to manage the affairs of the corporation during the interim between the meeting of the board of directors, and for the amendment of the charter of the corporation so as to eliminate the class B stock and make all of the stock in the corporation have the same rights, powers, and preferences, and for the transaction of all other business which may be legally brought before it."

Plaintiff Xanthull and all of the defendants were present at the time and place designated in said call. At this meeting all holding class B stock participated and voted their stock against the protest of plaintiff Xanthull, who held 51 per cent. of class A stock. At such meeting and upon the votes of all present, the by-laws of the corporation were changed or amended by the votes of those holding only 49 per cent. of class A stock and 210 shares of the 250 shares of class B stock; plaintiff Xanthull voting his 51 per cent. of class A stock against such change.

By such change, if lawfully made, the provision in the old by-laws providing that class A stock only should have the right to vote was eliminated, and class B stock was empowered to vote with equal power with class A stock.

After the change was adopted as above indicated, John G. Manison introduced a motion providing for an amendment of the char-

ter of the corporation by eliminating the provisions of the old charter conferring upon class A stock the exclusive right to vote, and conferring upon class B stock the right to vote, and empowering the holders of such stock to act as directors. Challenging the power of the meeting to so amend the charter, Xanthull made the following statement and protest:

"The directors have no authority to change the charter of this company. That under the laws, decisions, and statutes of this state the stockholders are the only ones who can undertake to change the charter; and this is not a stockholders' meeting."

Disregarding Xanthull's protest, the proposed amendments were adopted by the votes of the defendants; Xanthull voting his 51 per cent. of class A stock against such adoption.

John G. Manison then offered a motion, reciting that all stockholders were present, and proposing that the old charter be amended so as to eliminate all classes of stock and to provide that all stock should be of the same class, with the same rights and privileges, and that three of the directors be authorized to execute all necessary papers to carry out such amendment. To such proposal, Xanthull made the following protest:

"This is not a stockholders' meeting; there has been no call for a stockholders' meeting. The directors have no authority to in any way affect the charter of this company. Under the law of Texas, only the stockholders can change the charter of the company."

Disregarding the protest of Xanthull, the question of adoption of such amendment was put to a vote and by those present, in like manner as was the proposed amendment of the by-laws, and adopted.

After the recital that all stockholders were present, the meeting also adopted by a vote of those holding 49 per cent. of class A stock, the proposed amendment to the by-laws, over the protest of Xanthull, as follows:

"This is not a stockholders' meeting. There has been no call for a stockholders' meeting. The directors have no authority in any way to affect the charter of the company. Under the laws of Texas, only the stockholders can change the charter of the company."

The charter as amended was prepared and forwarded to and approved by the secretary of state, who at the time had no knowledge of the protest of Xanthull.

On the 18th day of January, 1927, Paul A. Xanthull, for himself and in behalf of the St. Regis Candies, Inc., in its corporate name, brought this suit, and, as grounds for an injunction prayed for, alleged substantially the facts above stated, and further alleged that the original or first charter, "as written and signed by the parties thereto, and as filed in the office of secretary of state of the state of Texas, and approved, constituted a contract upon the parties thereto, who had voluntarily entered into such contract, and all the terms and provisions thereof were and constituted the charter of said corporation and the contract of the incorporation; that said contract could not be and cannot be changed or altered or impaired except by the consent of all the parties thereto."

He further alleged the annual meeting of the stockholders of the corporation would be held on the next day, that is, the 19th day of January, 1927, and that at such meeting the defendants would, unless restrained, undertake to vote class B stock, and thereby control such meeting, and elect directors of their own choosing, and undertake to shape the policies of the corporation, and interfere with, alter, and disturb the policy thereof as established by Xanthull as president, and deprive him of the control of the corporation and the right to prescribe its policies, all of which was conferred upon him by his ownership of 51 per cent. of the class A stock, and by the terms of the charter and by-laws, and also deprive him of the right, as the owner of the majority of the voting stock, to name the directors; that such threatened action on the part of defendants, if carried out, would cause loss to the growing corporation, injure its good will and standing, and demoralize the personnel and organization thereof, and cause it financial loss, etc., resulting in irreparable damage, for which plaintiffs would have no adequate remedy at law.

The prayer was for an injunction to restrain defendants, their agents, etc., from in any way exercising or undertaking to exercise any rights, powers, or privileges by virtue of the purported amended charter and by-laws, to restrain defendant Manison, as secretary of the corporation, from receiving or certifying as having received any votes of class B stock at said annual meeting to be held January 19, 1927, or at any other meeting, and that upon final hearing said purported amended charter and by-laws be declared void.

On the presentation of the plaintiff's petition to Judge Boyd, of a district court of Harris county, a temporary restraining order was issued restraining the defendants from in any way exercising or undertaking to exercise any rights, privileges, or duties under the purported amended charter and by-laws, from voting or undertaking to vote at such annual meeting, or any other meeting, the class B stock, and restraining defendant Manison, as secretary of the corporation, from receiving or certifying as having received any votes of class B stock at any meeting whatever until the further orders of his court. It was further ordered that the cause be set for further hearing before Judge Ashe, judge of the Eleventh district court of Harris county, on the 24th day of January, 1927.

On the date last mentioned, the defendants

appeared and filed their joint answer, and therein challenged the jurisdiction of the district court to determine the matters involved, and asserted that the suit could be brought only by the state of Texas in a direct proceeding brought against the corporation. They also specially excepted to the petition in so far as it purported to be a suit upon the contract, in that said petition as well as the contract sued upon show that provisions of the contract are contrary to the Constitution and statutes of this state, and against public policy, and therefore void, and no action could be maintained thereon.

Upon a hearing on the 22d day of February, 1927, the injunction prayed for was denied, and the temporary restraining order continued in force pending the appeal from the order refusing the injunction.

From the judgment refusing to grant the injunction prayed for, the St. Regis Candies, Inc., and Paul Xanthull have appealed.

It is the contention of appellees, defendants in the lower court:

"That the provision in the charter of St. Regis Candies, Inc., with reference to the classification of stock into class A and class B, with voting privileges exclusively to class A stock, was unconstitutional, unauthorized by law, against public policy, arbitrary, and unreasonable, and therefore void. That the provisions in the by-laws with reference to voting privileges and amendment of by-laws by vote of class A stock only were likewise contrary to law and void. It was therefore argued that as these provisions were void, all of the stock of the corporation had voting privileges, and that the actions of defendants at the special meeting of January 13, 1927, being the act of a majority of all stock, were valid, and that the amendment to the by-laws and charter were in all things legal and binding."

Upon the foregoing statement we certified to the Supreme Court the following questions:

"No. 1. Is the contract entered into between the appellant Xanthull and the appellees, which was carried into the charter of the corporation, by the terms of which class A stock only had the right to vote, a valid contract; that is, is it binding as against the holders of class B stock, so as to exclude such stock from being voted? In other words, is there any provision in either our Constitution or statutes which demands that stock such as class B in the present case shall have the right to vote, regardless of a provision in the charter of the corporation to the contrary?

"No. 2. Is such contract void as against public policy?"

In an elaborate opinion by the Commission of Appeals, adopted by the Supreme Court on May 8, 1928 (3 S.W.[2d] 429), the first question was answered in the affirmative and the second in the negative.

Appellant first challenges the contention of appellees that the plaintiff's suit was an attack upon the charter of the St. Regis Candies, Inc., and that such suit could be brought only by the Attorney General of the state in a direct proceeding with the consent of the state, etc., and says that the purported amended charter was a nullity, and that the act of the secretary of state did not have the effect to validate it, or to put it into force or effect, and therefore that Xanthull had a right to bring and maintain his suit in the district court of Harris county, praying for an injunction to restrain the defendants from carrying out their attempted and threatened acts under said purported amended charter, in order to prevent injury to the corporation and to protect him (Xanthull) in his rights acquired under the contract entered into between the parties; that the suit was not an attack upon the charter of the corporation, but rather is one to protect it against the unlawful attempt of the defendants to destroy it.

[1] It is made clear from the facts of the case, as we have already stated them and the law, that the plaintiff's suit was not an attack upon the charter of the corporation, but was rather one asking that the defendants be enjoined from unlawfully destroying the same, and that such suit was properly brought by the plaintiff. Thompson on Corporations, vol. 1, p. 446, § 394; Fletcher on Corporations, vol. 6, p. 6811, § 4003, vol. 7, p. 7674, § 4355; Cook on Corporations, vol. 2, p. 1422, § 502; Beach on Private Corporations, vol. 1, p. 114, § 94; 14 Corpus Juris, 199, § 205, note 72; Parks v. West, 102 Tex. 11, 111 S. W. 726; Trimmier v. Carlton (Tex. Civ. App.) 264 S. W. 253; Johnson v. Tribune-Herald Co., 155 Ga. 204, 116 S. E. 810; Alexander v. Atlanta & W. P. Railway Co., 108 Ga. 151, 33 S. E. 866; Black v. Delaware & R. Canal Co., 24 N. J. Eq. 455; Tucker v. Russell (C. C.) 82 F. 263; Ricker v. Larkin, 27 Ill. App. 625; Todd v. Ferguson, 161 Mo. App. 624, 144 S. W. 159.

The authorities cited support the rule announced by Fletcher on Corporations, vol. 7, p. 7694, § 4355, as follows:

"If an unauthorized and illegal amendment is accepted by a corporation and is about to be acted upon, a stockholder who has not assented thereto or become estopped from complaining may bring an equity proceeding to enjoin or set aside any action by the corporation under such amendment. In such proceedings, the usual equity rules as to procedure govern."

[2] It is also insisted by appellant that the trial court erred in refusing the injunction prayed for, because the provisions in the original charter and the by-laws of the St. Regis Candies, Inc., classifying the stock of the corporation into class A stock and class B stock, and conferring on class A stock the sole and exclusive privilege of voting, were adopted, accepted, and acted upon for a peri-

od of one year by all the stockholders, constituted a binding contract between the stockholders which could not be abrogated in the manner attempted by appellees, and therefore the proposed amended charter and by-laws adopted by those holding 49 per cent. only of class A stock, over the protest and negative vote of appellant Xanthull, who held 51 per cent. of such stock, were absolutely void and of no effect.

It is unnecessary for us to do more in support of appellant's last contention than to cite the answers of the Supreme Court to the questions certified by this court, which have been set out herein. But it is not inappropriate to here say that it has been held by many authorities that the charter and by-laws of a corporation constitute a contract between the members of such corporation, and are valid and binding. 14 Corpus Juris, 161 and 162; 7 R. C. L. p. 99, § 72; Overland Automobile Co. v. Cleveland (Tex. Civ. App.) 250 S. W. 453; 14 Corpus Juris, 346, 347; 7 R. C. L. pp. 142 and 143; Howe Grain & Mercantile Co. v. Jones, 21 Tex. Civ. App. 198, 51 S. W. 24.

We conclude that the trial court erred in refusing the injunction prayed for, and, as the case seems to have been fully developed, it becomes our duty to reverse the judgment of the trial court and to remand the cause to that court, with instructions to grant the injunction prayed for by the plaintiff, and it is so ordered.

Reversed and remanded, with instructions.