**QUILLIAM et al. v. HEBBRONVILLE
UTILITIES, Inc. et al.**

No. 12286.

Court of Civil Appeals of Texas.
San Antonio.

May 31, 1951.

Rehearing Denied June 27, 1951.

Tatum, Camp & Ball, Beaumont, for appellants.

M. J. Arnold, San Antonio, Mann & Nesbitt, Laredo, for appellees.

NORVELL, Justice.

The Hebbronville Utilities, Inc., is a Texas corporation capitalized at $20,000, represented by 200 shares of stock having a par value of $100 each. The company received its charter on January 28, 1936, and the original stock subscribers were, W. A. Dannelley, Roy Yaeger, Mrs. Clara Yaeger, and W. R. Quilliam, each subscribing for 50 shares of a par value of $5,000. W. R. Quilliam transferred his fifty shares to his wife, Gladys H. Quilliam, who was plaintiff below and appellant here.

The original by-laws of the corporation provided for cumulative vote. The by-law provision relating thereto was amended and Mrs. Quilliam attacked the validity of such amendment, as well as various other corporate acts of the stockholders and directors with reference to the payment of salaries and the refusal to pay dividends until all outstanding indebtedness of the corporation had been retired. She also prayed for the appointment of a receiver and for injunctive relief.

Trial was to the court without a jury and a judgment rendered denying to Mrs. Quilliam any and all relief prayed for, except for declaring valid certain checks issued by the corporation and held by Mrs. Quilliam.

Findings of fact and conclusions of law were requested of and filed by the trial judge.

The validity of the judgment is attacked by nineteen points set forth in a 192-page typewritten brief. Obviously, a point by point treatment of the appeal is precluded if this opinion be kept within reasonable bounds. As we view the case, its disposition is governed by a few controlling propositions of law and may best be discussed by first considering a stipulation filed by the parties in the court below and the trial judge's findings of fact, from which the following statement is made:

On January 25, 1934, W. A. Dannelley, Roy Yaeger and W. R. Quilliam received a charter from the State of Texas for a corporation known as Hebbronville Public Service, Inc. On November 19, 1935, certain financial rearrangements and undertakings in connection with said Hebbronville Public Service, Inc., were contemplated by said parties, together with Clara Yaeger, wife of Roy Yaeger, who later became the incorporators of the Hebbronville Utilities, Inc. A written contract was prepared which provided: "That each of the above named parties (Dannelley, Quilliam, Yaeger and Mrs. Yaeger) are to own, control and operate what will be known as the Hebbronville Public Service, Inc. (a waterworks system), share and share alike, or in other words, each shall own an undivided one-fourth interest in and to the whole of said water system."

A proposed set of by-laws was prepared which provided for cumulative voting, but also provided for the amendment or abrogation of any of the by-laws.

Later, however, it was decided to dissolve Hebbronville Public Service, Inc., and form a new corporation to be known as Hebbronville Utilities, Inc. After the charter to the latter corporation had been granted, the incorporators as stockholders adopted and used the set of by-laws originally prepared by the dissolved corporation. The original by-laws adopted on January 31, 1936, contained the following provisions:

"Article 3, Section 6. 'Every stockholder shall have the right to vote, in person or by proxy for the number of shares of stock owned by him for as many persons as there are directors or managers to be elected, or to cumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal or to distribute them on the same principle among as many candidates as he shall think fit.' "

"Article 7, Section 1. 'Amendments to these By-laws may be made by a vote of the stockholders representing a majority of all the stock issued and outstanding at any annual stockholders' meeting, or at any special stockholders' meeting when the proposed amendment has been set out in the notice of such meeting.'"

The original by-laws of the corporation provided that the annual stockholders' meeting should be held on the 15th day of January, but in 1948 this provision was amended so as to change the date for the annual meeting to the third Monday in March of each year. The following year at the annual stockholders' meeting held on March 19, 1949 (the third Monday in March), Article 3, Section 6, of the by-laws was amended to read as follows: "Every stockholder shall have the right to vote in person or by proxy for the number of shares of stock registered in his or her own name on the books of the company for as many persons as there are directors to be elected. No cumulative voting for directors shall be permitted."

This article and section was subsequently amended at a special stockholders' meeting held on March 31, 1950, by inserting a proviso requiring that proxies must be filed with the secretary of the corporation not less than one day before the meeting.

The notice of the annual meeting held on March 19, 1949, stated that an amendment of Article 3, Section 6, of the by-laws would be presented, although a copy of the proposed amendment did not accompany the notice.

As we construe Article 7, Section 1, it is not necessary that copies of proposed amendments accompany the notice of an annual meeting as distinguished from a special meeting. There appears to be no question of the sufficiency of the notice of the special meeting of March 31, 1950, other than the general contention that it was not given by legally selected officials of the corporation.

The validity of numerous other official acts of the stockholders and board of directors is questioned, such as further amendments to the by-laws, the refusal to recog-nize Mrs. Quilliam as a director after an election held under the by-law amendment abolishing cumulative voting, and her removal as an officer of the corporation. We shall not discuss these matters in detail, as all of them depend upon the validity of the amendment doing away with cumulative voting.

It is obvious that under cumulative voting Mrs. Quilliam could elect herself or her nominee to the board of directors by her 200 votes being the number of shares (50) held by her times the number of places (4) upon the board of directors. Under non-cumulative or straight voting she would have but 50 votes for directorship and could be defeated for a place on the board by a vote of 150 to 50, as was done in the present instance.

The authorities relied upon by appellant are, St. Regis Candies, Inc., v. Hovas, 117 Tex. 313, 3 S.W. 429, Id., Tex.Civ.App., 8 S.W.2d 574, and cases similar thereto. In the case cited it appeared that Paul Xanthull was the sole owner of a prosperous business and entered into an arrangement with S. N. Hovas, R. P. Donigan, P. H. Donigan and John G. Manison to form a corporation known as St. Regis Candies, Inc. The charter of the corporation provided for a capital stock of $125,000 having a par value of $100 per share and divided into 1,000 shares of Class A stock and 250 shares of Class B stock. It was specifically provided in the charter that "Class B stock shall be distinguished from Class A stock in that it shall have no voting privileges or power." Of the Class A stock, Xanthull held 510 shares, while Hovas and others held 490 shares. Of the Class B stock Xanthull held 40 shares and Hovas and others held 210 shares. While Xanthull had a majority of Class A stock, he held 550 shares of the total of the A stock and B stock as against 700 shares held by Hovas and others.

Hovas and the shareholders other than Xanthull called a meeting for the purpose, among others, of amending the by-laws so as to eliminate the distinction between Class A and Class B stock, or, in other words, to invest the holders of B stock with voting privileges. On the question of the adoption

of this change the Class B stock was voted. The Supreme Court, in answer to certified questions, held that this action was illegal. Class B stock was voted in the face of a charter provision which provided that it had "no voting privileges or power." It was a clear instance of "getting the cart before the horse."

In the present case, Mrs. Quilliam, as assignee of her husband's shares of stock, had no vested interest in the plan to select directors by cumulative stock voting. As above pointed out, the written agreement (other than that evidenced by the charter and by-laws themselves) had to do with another corporation, the Hebbronville Public Service, Inc. The rights of the parties are determined and controlled by the charter and by-laws ultimately adopted by Hebbronville Utilities, Inc.

It is clear that the cumulative voting provision originally contained in Article 3, Section 6, applies only to the election of directors or managers selected by the stockholders.

It is equally clear that under Article 7, Section 1, relating to an amendment of the by-laws, straight voting is provided for. The section specifically provides that amendments "may be made by a vote of the stockholders representing a majority of all the stock issued and outstanding."

There is no provision in the charter, or the by-laws, which would prevent a majority of the stockholders from changing the provision for electing directors by cumulative voting by amending the by-laws in accordance with the applicable provisions contained therein. The contract relating to another and different corporation, Hebbronville Public Service, Inc., later dissolved, would not have the effect of making it impossible to change by amendment of the by-law the cumulative plan of voting for directors. Nor is it clear that this agreement even if applicable would have this effect. The amendment to Article 3, Section 6, was adopted in accordance with the voting provisions of Article 7, Section 1, relating to amendments and is thus binding upon all parties to this suit.

We regard the holding above set forth as essentially controlling the disposition of this lawsuit. The board of directors elected from and after March 19, 1949, when cumulative voting was abolished, were and are the legally constituted governing bodies of the corporation. The following rule, quoted in 10 Tex.Jur. 787, Corporations, § 157, from Farwell v. Babcock, 27 Tex.Civ.App. 162, 65 S.W. 509, 513, is applicable here: "The court never substitutes its judgment on questions of policy for that of the governing body of the corporation, and does not seek to decide business questions, nor to set aside the acts of the majority, because the court may think that another course would have been wiser, or even that the course adopted was plainly unwise. The course of conduct by the directors must have been such as to plainly show an intention to sacrifice the interest of the corporation and the minority stockholders."

While complaint is made by appellant of the payment of salaries to officers, the refusal to declare dividends and other like acts or omissions of the corporation, the trial judge found against appellant on these contentions. Specifically, the judge found that the respective salaries complained of were reasonable and that the corporation had received the benefit of services, "the reasonable value of which to the corporation was the amount of salaries paid therefor;" that the action of the board of directors in refusing to pay dividends until a lien against the property was discharged was reasonable and did not constitute an abuse of discretion on the part of the board, and that no showing for the necessity for the appointment of a receiver was made. We have examined the evidence relied upon to support these findings and find it sufficient. We therefore adopt the trial judge's findings with reference thereto and the conclusions of law based thereon.

We have examined all points contained in appellants' brief and are of the opinion that none of them discloses a reversible error. The judgment appealed from is accordingly affirmed.