Cite as 2025 Ark. App. 451

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-24-256

|  |  |
|---|---|
| KENNETH GOLDMAN AND DEANNA GOLDMAN<br><br>APPELLANTS<br><br>V.<br><br>MEGAN WALKER AND WESS BARTON<br><br>APPELLEES | Opinion Delivered October 1, 2025<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14PR-22-77]<br><br>HONORABLE EDWIN KEATON, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Deanna and Kenneth Goldman appeal the dismissal of their petition for adoption of MC. Specifically, the Goldmans argue that the circuit court erred in granting Megan Walker's motion for directed verdict, or alternatively, the circuit court erred when it determined that the preponderance of the evidence did not support their petition. We affirm.

## I. *Background*

On June 2, 2022, the Goldmans filed a petition to adopt MC. Walker objected to the petition, and a hearing was held in October 2023. At the hearing, Deanna Goldman testified that while Walker was pregnant with MC, Walker met Deanna at Deanna's shop. MC was born on November 3, 2019; two weeks later, Walker reached out to Deanna, stating that she and MC were homeless and needed a place to stay. Walker and MC then moved in with the

Goldmans. The Goldmans allege that while Walker and MC lived with them, Walker behaved very erratically and would routinely leave MC in the Goldmans' care for weeks at a time.

On October 7, 2020, the Goldmans filed for emergency guardianship over MC. After filing their petition for guardianship, the Goldmans had Walker "taken out of the home." Deanna first testified that Walker simply was not at their house anymore, so she packed up Walker's belongings. Later, Deanna testified that she had to get police officers to escort Walker out of her home. Following this, Deanna became worried that Walker was smoking marijuana in the presence of MC and took MC to be tested. The results determined that MC had methamphetamine in his system. MC was ten months old at the time of the test.

On March 10, 2021, the circuit court in the guardianship case held a hearing regarding the Goldmans' petition for an emergency guardianship over MC. Walker appeared pro se at the hearing; Wess Barton, the putative father, was incarcerated at the time of the hearing but consented to the Goldmans' obtaining a guardianship over MC. The court granted the Goldmans permanent guardianship. The order further specified that the issue of potential visitation rights was reserved for a later date and could be raised by Walker, Barton, or the Goldmans.

Deanna testified that after gaining guardianship over MC, she did not have any contact with Walker. Deanna, however, admitted that Walker texted her regularly for a while requesting to see MC and then stopped. Deanna could not remember exactly when these requests took place but said they may have been around 2021. Deanna further acknowledged

that Walker stopped attempting to contact MC because Deanna never responded to her: "She sent me some texts, but I can't tell you exactly when she sent them and then she stopped sending them to me because I wouldn't reply back." On cross-examination, Deanna stated that there was an instance in which the Goldmans and MC ran into Walker and Walker's new husband, Josh, at Walmart. Josh asked the Goldmans if they would let Walker see MC, and Deanna refused and left the store. Deanna eventually conceded that if Walker changed her circumstances and MC's therapist approved, she would allow visitation between Walker and MC.

Deanna further testified that she had limited direct communication with Barton. She stated that her first direct communication was through Facetime conversations with Walker while he was incarcerated. Deanna testified that she had some additional communication with him, but that ended at some point. Deanna conceded, however, that Barton had sent multiple letters seeking visitation with MC, to which she did not respond. Deanna further testified that once Barton was released from prison,[1] he contacted her "several" times about seeing MC. During the cross-examination by Barton, Deanna denied his claims that she promised to give MC to him after he was released from prison if he agreed to the temporary guardianship. When asked whether Barton had any letters stating that agreement, Deanna testified that she did not know. When Barton asked Deanna whether they had a phone call

---

[1]Deanna testified that she thought he was released in January 2023, but Barton stated that he was released in December 2022.

about the guardianship in which she promised she was not going to take his son from him, she stated that it was too long ago to remember.

The circuit court then asked Deanna why neither Walker nor Barton was allowed to have visitation with MC with her present so she could make sure that MC was safe. Deanna acknowledged that she could have done that, but she chose not to. She did not provide any reason other than she felt they should have to petition the court in the guardianship case and request visitation.

Mitch Goldman testified that all the letters and texts went through Deanna, so he did not know about them other than in passing. On cross-examination, however, Barton produced a letter written by Mitch to him showing that they were in contact. Upon seeing the letter, Mitch conceded that he had written Barton a letter, and it was likely Barton had many letters from Deanna. Mitch further conceded that Barton had sent them a text a couple days before the current hearing. Mitch and Deanna both testified that they had changed MC's name to Goldman for school purposes almost immediately after gaining temporary guardianship over MC.

Following testimony, Walker moved for directed verdict, arguing that there was insufficient evidence presented to warrant terminating her and Barton's parental rights. The Goldmans responded that while there have been some requests from Walker and Barton to see MC, they were sporadic, and neither party attempted to petition the court for visitation when they were rebuffed by the Goldmans. Accordingly, the Goldmans said the contacts

testified to were not meaningful, and Walker's and Barton's consent to the adoption should be waived.

The circuit court ruled from the bench, granting Walker's motion for directed verdict. The circuit court expressed concern that both Walker and Barton had attempted to establish contact with MC and that the Goldmans explicitly refused to allow any contact with MC once they had the guardianship. The circuit court found it particularly troubling that MC's name had been changed to Goldman so close to the beginning of the guardianship and noted that the permanent guardianship already granted the Goldmans the ability to protect MC from Walker and Barton if they were found to pose a danger.

Following the ruling from the bench, the Goldmans moved for a new trial in accordance with Ark. R. Civ. P. 59. In their motion for a new trial, the Goldmans presented the same arguments they now present on appeal. This motion for a new trial preserved these issues for appeal. *See* Ark. R. Civ. P. 59(f); *Jenkins v. APS Ins., LLC*, 2013 Ark. App. 746, at 6, 431 S.W.3d 356, 361. This appeal followed. No response was filed by either Walker or Barton.

## II. *Standard of Review*

The standard of review applicable to the issues in this case is well settled: adoption cases are reviewed de novo. *In re Adoption of A.P.*, 2021 Ark. App. 440, at 8, 638 S.W.3d 293, 299. The decision of the circuit court will not be reversed on appeal unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, despite evidence to support it, the reviewing court is left with the "firm conviction that a mistake has been made." *Id.* at 9, 638

5

S.W.3d at 299. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

Ordinarily, the consent of a natural parent is required in an adoption case. Ark. Code Ann. § 9-9-206 (Repl. 2020). However, this consent is not required "if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2020). A significant failure is "one that is meaningful or important" and is "unjustifiable if it is voluntary and intentional, i.e., arbitrary and without adequate excuse." *Gordon v. Draper*, 2013 Ark. App. 352, at 6, 428 S.W.3d 543, 546. A person who wishes to adopt a child must prove by clear and convincing evidence that consent is unnecessary. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 7, 560 S.W.3d 806, 812. Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007).

III. *Discussion*

As their first point on appeal, the Goldmans allege that the circuit court clearly erred when it granted Walker's motion for directed verdict at the adoption hearing. Specifically, the Goldmans allege that the circuit court did not have the authority to grant a directed verdict; and conversely, the circuit court erred in granting the motion for directed verdict when Walker failed to state specific grounds for her motion.

In their argument that the circuit court lacked the authority to grant a directed verdict during the adoption hearing, the Goldmans argue that the Arkansas Adoption Code explicitly states that the circuit court may decide only "at the conclusion of the hearing" whether the required consents have been obtained and/or excused. Ark. Code Ann. § 9-9-214(c) (Repl. 2020). The Goldmans argue that by granting the motion for directed verdict, the circuit court failed to wait until the end of the hearing, making the court's ruling dismissing the petition for adoption clearly erroneous. To support this argument, the Goldmans rely heavily on *In re Adoption of Martindale*, 327 Ark. 685, 689, 940 S.W.2d 491, 493 (1997). *Martindale*, however, is not as broad as the Goldmans would like to present it. Rather, *Martindale* holds that *in the event of a conflict*, the statute overrides the competing rule of civil procedure. Our supreme court clarified in *Norton v. Hinson*, 337 Ark. 487, 490, 989 S.W.2d 535, 536 (1999), that "Ark. R. Civ. P. 81(a) provides that the rules of civil procedure do not apply when they are 'different' from the procedure established in the statutes creating the special proceedings." Accordingly, Ark. Code Ann. § 9-9-214(c) overrides Ark. R. Civ. P. 50 only if there is an active conflict. Therefore, the Goldmans' argument is not persuasive absent an active conflict, which does not exist in the instant case.

As the second part of their first point on appeal, the Goldmans argue that even if the circuit court *could* entertain a motion for directed verdict in an adoption proceeding, the motion was not presented with sufficient specificity for the Goldmans to argue against or the circuit court to rule on it. Walker stated the following when asking for directed verdict:

Just, procedurally, I'd move a instructed [sic] verdict on the issue of termination of parental rights. I don't believe that there's been clear and convincing evidence that the statute's been violated concerning *one year's scenario making requests for seeing the child.* And I, certainly, don't think that the additional evidence that we've heard concerning the fact that they seem to indicate, *even if they adopted, they would allow them to possibly have interaction*, negates the extreme remedy of terminating the parental rights. And add to that the fact that there is a permanent guardianship in place. No one's trying to overturn that. *There is a pending pleading concerning visitation.* That's the core issue in this case, I believe. And I move for an instructed [sic] verdict on the issue of termination of parental rights.

(Emphasis added.)

Here, Walker argued that the Goldmans had failed to present sufficient evidence that she and Barton had failed to see, or request to see, MC for at least one year. Additionally, Walker argued that (1) the Goldmans' testimony that they would allow contact with Walker after adoption and (2) the Goldmans having a permanent guardianship over MC cut against the Goldmans' claims that they needed adoption for MC's safety. Finally, Walker argued that she had filed a motion for visitation in the guardianship case, and her right to visit MC could be decided by that court. These arguments were specific enough for the purposes of Ark. R. Civ. P. 50(a).

The Goldmans also claim that because Walker argued only that there was insufficient evidence to *terminate* parental rights in their motion for directed verdict, the circuit court erred by ruling on whether there was sufficient evidence to warrant the *waiver of consent* for the adoption. Our supreme court has held that a circuit court in its ruling may expand on a defendant's motion for directed verdict. *Lytle v. Wal-Mart Stores, Inc.*, 309 Ark. 139, 142, 827 S.W.2d 652, 653 (1992) ("We said in *Standridge* [*v. City of Hot Springs*, 271 Ark. 754, 610

8

S.W.2d 574 (1981),] that the reason for Rule 50(a) is to bring specific grounds for the motion to the court's attention. If the trial court considers those grounds, and others as well, this does not violate the rule."). Accordingly, the circuit court did not err when it determined parental consent should be excused rather than simply whether parental rights could be terminated. Furthermore, as they themselves note, the Goldmans were neither prejudiced nor surprised by this since they argued whether *parental consent* should be excused in response to the motion for directed verdict—before the circuit court entered a ruling.

For their next point on appeal, the Goldmans argue that the circuit court erred in dismissing their petition for adoption. Specifically, they argue that the preponderance of evidence supported their petition. First, the Goldmans allege that the evidence illustrated that neither biological parent communicated with nor provided care or support for MC for over a year. Second, the Goldmans allege that the circuit court erred when it relied on the Goldmans' status as permanent guardians as grounds for denying their petition to adopt.

We view the issue of justifiable cause as factual but one that is determined largely on the basis of the credibility of the witnesses, and we give great weight to a circuit court's personal observations when the welfare of young children is involved. *Rodgers v. Rodgers*, 2017 Ark. 182, at 4, 519 S.W.3d 324, 327 (citing *In re Adoption of K.F.H. & K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993)). "Without justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 8, 560 S.W.3d at 812. Recently, the majority in *In re Adoption of Minor Child*,

2024 Ark. App. 202, at 5, 686 S.W.3d 858, 862, stated that communication and visitation are not one and the same.

According to the facts presented, there was no court-ordered visitation for Walker to see MC. Rather, the court order stated that the issue of visitation was reserved and that any party, including the Goldmans, could later petition for visitation, and the issue would be taken up at that point. In fact, Deanna testified that she could have permitted contact between Walker and Barton and MC at any point and chose not to. Testimony before the circuit court illustrated that Walker attempted to visit with MC and was ignored by the Goldmans. Moreover, there was testimony that Walker attempted to see MC at Walmart, and the Goldmans removed MC from the store before Walker could do so. Deanna explicitly testified that Walker stopped attempting to contact MC because Deanna never responded to her requests. Furthermore, the testimony at trial showed that although Barton was incarcerated, he nevertheless attempted to contact MC multiple times. Both Mitch and Deanna acknowledged that Barton wrote letters seeking to communicate with MC. It is also undisputed that upon his release from prison, Barton texted regularly to see MC, and Deanna ignored his texts. We have previously held that "the question is not whether a parent could have done more; rather, it is whether the parent's efforts to establish a significant relationship, despite the other parent thwarting his or her efforts, were sufficient such that consent was not required." *In re Adoption of Minor Child*, 2022 Ark. App. 408, at 8, 653 S.W.3d 544, 549.

The Goldmans argue that the circuit court could not determine when the various requests for visitation occurred with the evidence before it. Since Barton was released from prison *after* the Goldmans filed their petition for adoption of MC, any requests he made after his release could only have been within the year. Moreover, the burden of proof was on the Goldmans, not on Walker and Barton, to prove that for a period of at least one year Walker and Barton failed significantly without justifiable cause to communicate with MC or that they failed to provide for the care and support of the child as required by law or judicial decree.[2] Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2015); *see In re Adoption of J.N.*, 2018 Ark. App. 467, at 7, 560 S.W.3d at 812. Accordingly, the Goldmans were required to show that neither Walker nor Barton attempted to visit or care for MC for at least one year. *Id.* They cannot shift the burden to force Walker and Barton to prove when and how often they tried. Accordingly, without sufficient information to suggest otherwise, the circuit court did not clearly err in determining that the Goldmans had not met their burden. Either consent or a waiver is required from both biological parents before an adoption petition will be granted. Ark. Code Ann. § 9-9-206(a)(1)–(2). Because the circuit court did not err in determining that Walker's and Barton's consents were required, the circuit court properly dismissed the Goldmans' adoption petition.

---

[2] The statute mentions both communication and support; however, the appellants did not develop the issue of failure to support MC other than a brief mention. Moreover, the issue of care would run afoul of the same issues facing the Goldmans' argument regarding the failure to communicate.

IV. *Conclusion*

The circuit court was in the best position to determine the credibility of the Goldmans, and it found that their testimony was not fully credible. *Gadberry v. Gadberry*, 2023 Ark. App. 398, at 28. We will not reweigh the evidence for the Goldmans, nor will we shift the burden of proof from them to Walker and Barton. *Hamerlinck v. Hamerlinck*, 2022 Ark. App. 89, 641 S.W.3d 659. There was sufficient evidence presented for the circuit court to find that Walker's consent was necessary.[3] Accordingly, the circuit court did not clearly err in granting Walker's motion for directed verdict.

Affirmed.

THYER and HIXSON, JJ., agree.

*Bell, Boyd & Jameson, PLLC*, by: *Jennifer Jameson McKendree*, for appellants.

One brief only.

---

[3]Because we find that the circuit court did not err in requiring Walker's and Barton's consents for the petition for adoption, we do not need to reach the question whether it was proper to rely, in part, on the permanent guardianship to grant the motion for directed verdict.