**ROBERT & COMPANY, INC., a corporation, v. J. A. MORTLAND**

33 So. (2nd) 732                             January Term, 1948

February 6, 1948                                    Division A

*Miles H. Draper,* for appellant.

*Fowler, White, Gillen, Yancey & Humkey,* for appellee.

TERRELL, J.:

In 1938, the City of Tampa promulgated plans for the construction of a "Master sewer project," the cost of which was estimated at $4,000,000.00. Appellant hereafter referred to as defendant, became interested in securing the contract to perform the engineering work on this project. Appellee, hereafter referred to as the plaintiff, was also interested in securing the same contract, but later found that he was not financially able to undertake a project of that magnitude. After investigating the responsibility of a number of engineering firms, plaintiff decided that defendant was the best qualified firm in the field for the job. Through a mutual friend plaintiff contacted defendant and as a result of this contact, defendant sent its representative to Tampa to confer with plaintiff. Immediately after this conference plaintiff commenced performing services for defendant which we shall speak of more in detail later.

There was no written contract between the parties, but there are about one hundred communications in the record covering the period from January 1939 to March 1941, which give a very good idea of the services performed by the plaintiff, that were voluntarily accepted by defendant. The defendant and its agents made many requests of the plaintiff for reports and information as to developments in Tampa and all were promptly responded to. Much advice besides information was given the defendant and when the engineering contract for constructing the Master sewer system was awarded, defedant was the successful applicant, the fee agreed on being 3.7 per cent of the cost or a maximum fee of $148,000.00.

A great deal of work was done but on account of financial stress the City of Tampa in 1947 exercised its option to cancel its contract and paid defendant $33.014.22 for services. In 1943, after the Master sewer contract was entered into, the City of Tampa entered into contract with defendant for engineering service in connection with the construction of a water supply system. It is alleged that this contract was secured as the result of services performed by plaintiff for defendant. This contract was also canceled at the same time the Master sewer contract was canceled and defendant was paid $55,-000.00 for services. On both contracts defendant was paid $88,014.22 for engineering services, but has so far declined to pay plaintiff for services rendered.

Plaintiff alleges that a reasonable fee for his services would be ten per cent of the amount collected by defendant so he filed his declaration to recover such an amount or quantum meriut. Later he filed a bill of particulars detailing the services alleged to have been performed.

Defendant filed, (1) a plea of never was indebted, (2) a plea of never promise as alleged, (3) a plea of payment and (4) an amended plea wherein it was alleged that the plaintiff was paid $519.99 for engineering services by defendant, which constituted full payment and satisfaction of all sums due him. There was a replication to the fourth plea. On the issues so made, the trial resulted in a verdict for $4,801.42, with interest, to which a remittitur of $1,500.00 was required by the trial court. The remittitur was duly entered and a final judgment for $3,301.42, plus interest and costs, or a total of $4,867,20 was entered. Defendant has applied from the final judgment and plaintiff has cross appealed from that part of the final judgment requiring the remittitur.

It is not denied that plaintiff did perform a great deal of promotional and other service for defendant with the view of helping it secure the contracts in question, but the latter contends that his services were illegal and no contract to pay them can be enforced because (1) the Master sewer contract was with a public agency, and the compensation for plaintiff's services was entirely contingent. (2) The means used to

secure the contract with the City were personal or political and contrary to public policy, and being so, the plaintiff is precluded from recovery.

The plaitiff is a very reputable engineer, residing in the City of Tampa and the defendant is a very reputable engineering firm with its principal place of business in the City of Atlanta. It is not disputed that plaintiff rendered the services in question, that defendant knowingly accepted them, and that in the main, they consisted in (1) keeping defendant advised as to the local situation. (2) Contacting civic organizations and leaders and convincing them why defendant should be awarded the Master sewer contract. (3) Keeping defendant advised of developments in Tampa and directing his representatives whom to contact there. (4) Responding to defendant's requests for information, advice and opinions which required unending search and the writing of approximately one hundred letters and opinions.

At the conclusion of the testimony on the issues made by the pleas, defendant moved for a directed verdict on the ground that the contract was illegal for the reasons heretofore stated. This is the first time the legality of the contract had been challenged. We do not think that such a defense can be raised by the pleas entered, because the rule is well settled that if a contract is legal on its face, its illegality must be specially pleaded and proven. Edwards v. Miami Transit Co. 150 Fla. 315, 7 So. (2nd) 440; Givens v. Vaughin-Griffin Packing Co. 146 Fla. 575, 1 So. (2nd) 714; Logan v. Board of Public Instruction, 118 Fla. 184, 158 So. 720; Janett Realty Corporation v. Hoffman, 154 Fla. 144, 17 So. (2nd) 114; Lee v. Clearwater Growers Association, 93 Fla. 214, 111 So. 722.

Appellant counters the charge of illegality with the contention that he did not know the contract was illegal till the evidence was in and could not raise that defense earlier. He also contends that he had never admitted making a contract with the plaintiff and did not know the elements of his alleged contract till the trial came on. Finally he says that the illegality of the plaintiff's alleged contract consists more in the manner in which it was performed than it does in sub-

stance and this was unknown to him till the evidence was in. Williston on Contracts, Section 1761 is relied on to support this contention.

This might be a good defense under proper circumstances but the facts in this case do not warrant such a defense. The predominating weight of the evidence is to the effect that defendant is a very responsible engineering company, fully capable of handling the contract in question. It has performed contracts of this character in different parts of the country and enjoys a national reputation as good and responsible contracting firm. When plaintiff found that he could not handle the contract, he offered his services to defendant because of its standing and reputation as a contractor.

It is quite true that a small number of letters introduced in evidence recite suggestions that are disgusting and point to a low nauseating standard of professional conduct, but when read as a whole they are mere piffle and had no influence on letting the contract. The decided weight of the evidence shows that defendant was employed because it had the wherewith in character and material goods to execute the contracts and that the real purpose of plaintiff's employment was to acquaint the city officials of defendant's assets and convince them that it was to the city's interest to contract with defendant. It was on this showing that the trial court determined that plaintiff had a contract with defendant. Both sides admitted that its legality was a question of law and we think the trial court was correct in so holding. What has been said as to political influence applies as well to the charge that plaintiff's contract was had because his compensation was contingent. It is quite true that if the contract with a public body is secured as a favor in exchange for personal or political influence, it is contrary to public policy and cannot be enforced. There is not the slightest showing here that the contract in question was induced by favor or reward, nor is it shown that any corrupt influence was used or that anything more than competency and square dealing induced placing the contract.

Appellant relies on Wechsler v. Novak, 157 Fla. 703, 26 So. (2nd) 884, and similar cases, but we think these cases

**130**

clearly support the rule announced in the previous paragraph. We understand the general rule to be that an employment in which compensation is contingent on success in securing contracts from public officials is not illegal on its face. It must be shown that it was induced by favors or corrupt means. 46 A.L.R. 196. Edwards v. Miami Transit Co. 150 Fla. 315, 7 So. (2nd) 440. The record in this case is devoid of any showing that plaintiff had any personal or political influence or that the contract was induced by illegal influence. There is no showing that the city officials ever had knowledge of the piffle that was passed between plaintiff and defendant. The trial judge discarded it and we find no reason why we should take it seriously.

We have not overlooked what appellee says in support of his cross assignment of error, but we find no reversible error either as to the main or cross appeal.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.