632 So.2d 42 (1992)
In re Inquiry Concerning a Judge re Harvey N. SHENBERG. In re Inquiry Concerning a Judge re Alfonso C. Sepe.
Nos. 78748, 78749.
Supreme Court of Florida.
April 2, 1992.
*43 J. Klein Wigginton, Chairman and Roy T. Rhodes, Gen. Counsel, Tallahassee, and Marvin E. Barkin, Richard W. Candelora and Dinita L. James of Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, *44 Sp. Counsel to The Florida Judicial Qualifications Com'n, for petitioner.
Stephen J. Bronis of the Law Offices of Stephen J. Bronis, P.A., Miami, and Paul Morris of the Law Offices of Paul Morris, P.A., Coral Gables, for Judge Harvey N. Shenberg; Bruce Rogow of Bruce S. Rogow, P.A., Fort Lauderdale, and Bailey, Gerstein, Carhart, Rashkind, Dresnick & Rippingille, Miami, for Judge Alfonso Sepe, respondents.
PER CURIAM.
On October 15, 1991, this Court entered an order suspending without compensation, Harvey N. Shenberg and Alfonso C. Sepe (petitioners) from their respective judgeships. The petitioners filed Motions for Rehearing which we granted. On rehearing, the petitioners have filed Motions to Dismiss the Formal Charges and Motions to Vacate this Court's Order of October 15, 1991, because of a lack of due process. In addition, the petitioners have also filed Motions to Dismiss and Vacate the Formal Charges because of alleged discovery violations by the Judicial Qualifications Committee (JQC). We consolidate the petitioners' motions and cases, Shenberg No. 78,748 and Sepe No. 78,749, for the purpose of this opinion and accept jurisdiction pursuant to article V, section 12 of the Florida Constitution. We deny both of the petitioners' Motions to Vacate and Motions to Dismiss this Court's Order on October 15, 1991.
In early June 1991, the JQC received reports about an investigation by the United States Attorney's Office concerning alleged criminal misconduct by the petitioners. At this time, both petitioners took a voluntary leave from office with compensation. Based on copies of the search warrants and returns listing the property seized from the petitioners' homes and chambers, the JQC, on September 9, 1991, served the petitioners with a Notice of Investigation, pursuant to rule 6(b) of the Florida Judicial Qualifications Commission Rules. The Notice of Investigation invited the petitioners to make a statement, personally or by their attorneys, verbally or in writing, sworn or unsworn, explaining, refuting, or admitting certain matters relating to the search warrants.
On September 24, 1991, a federal grand jury handed down a fourteen-count indictment that charges the petitioners with, on various occasions, corruptly requesting, soliciting, accepting or agreeing to accept pecuniary benefit to influence the performance of their judicial duties, conspiring with others to improperly affect the outcome of court cases assigned to other judges, and participating in ex parte communications and financial transactions with defense attorneys appearing in cases before them. In addition, the indictment further alleges that Shenberg participated in a conspiracy to commit the murder of a confidential informant.
Following the grand jury's indictment, on September 26, 1991, the JQC served on the petitioners, pursuant to rule 8 of the Florida Judicial Qualifications Commissions Rules, an Order to Show Cause why the JQC should not recommend that they be suspended from their judgeships without compensation. The JQC combined the order to show cause proceeding with the notice of investigation proceeding. In response to the JQC's proceedings, each petitioner filed separate written requests for continuances, which the JQC denied.
The petitioners did not attend or send a representative to the JQC's notice of investigation and order to show cause proceedings; nor did either petitioner file a written response to the JQC's Order to Show Cause. The JQC found that the grand jury's indictment provided adequate probable cause to begin an inquiry into the petitioners alleged criminal misconduct and that the petitioners should be suspended without compensation until the inquiry was resolved.
On October 10, 1991, the JQC sent its report and recommendation by certified mail to the petitioners' chambers, and by regular mail to their home and attorneys. On October 15, 1991, this Court issued an Order suspending the petitioners without compensation pending final disposition of the inquiry. The petitioners filed a Motion for Rehearing and a Motion to Vacate the proceedings because they asserted that the suspension violated their due process right of an opportunity to be heard. This Court granted *45 the petitioners Motions for Rehearing in order to review our order suspending the petitioners without compensation.
The petitioners' Motions to Vacate their suspension without compensation asserts three due process violations: 1) the JQC's Notice of Hearing for the Order to Show Cause provided the petitioners with inadequate notice; 2) the petitioners' due process rights were violated because they did not have a full and fair opportunity to be heard before this Court; and 3) this Court's suspension of the petitioners without compensation violated their due process rights by forsaking the presumption of innocence in favor of the expediency of upholding public integrity and confidence in the judicial system.
In response, the JQC argues that because the petitioners received adequate notice of the September 30, 1991, proceeding they cannot complain that their opportunity to be heard was not meaningful. The JQC asserts that due process does not require that the petitioners have two hearings. It also argues that under rule 2.140(b)(2), Florida Rules of Judicial Administration, this Court has the discretion to dispense with a second show of cause proceeding when extraordinary circumstances require action by the Court before an opportunity for a response can be provided. The JQC reasons that because the indictments directly affect the public's confidence in the judiciary's integrity, the Court had to act quickly in suspending the petitioners without compensation. Thus, the JQC concludes that the petitioners do not have a right to address this Court's October 15, 1991 Order suspending them without compensation, nor did the Order violate the petitioners' due process rights.
We find that the petitioners' first due process claim is without merit. In In re Inquiry Concerning a Judge (LaMotte), 333 So.2d 22 (Fla. 1976), we held that twenty-four hours' notice is adequate for a show of cause hearing. In the instant case, the JQC provided notice four calendar days before the scheduled hearing. Thus, the JQC's notice to the petitioners exceeded the minimum requirements set by this Court. Accordingly, we find that the JQC gave the petitioners a full and fair opportunity to be heard concerning the Order to Show Cause.
The second and third issues concern the petitioners' due process rights before this Court. The Florida Constitution gives this Court the power to suspend judges for "conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office." Art. V, § 12(f), Fla. Const. After formal proceedings are begun and upon a request of the JQC, this Court may suspend a "judge from office, with or without compensation, pending final determination of the inquiry." Id. Short of impeachment by the legislature under article III, section 17 of the Florida Constitution, this is one of the strongest measures the Court may take to protect the integrity of the judiciary from judges who demonstrate a present unfitness to hold office. The Florida Constitution gives this Court flexibility and discretion to determine when to suspend a judge with or without compensation. Thus, the decisive issue in the case is whether the petitioners' due process rights were violated.
Turning to Florida case law, we have stated that procedural due process requires that a judge be given notice of proceedings against him or her, that a judge be given an opportunity to be heard, and that the proceedings against the judge be essentially fair. See In re Kelly, 238 So.2d 565, 571 (Fla. 1970), cert. denied, 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed.2d 246 (1971). The Florida Rules of Judicial Administration require that a judge be given notice either personally or by certified mail at his chambers, or if returned undelivered to the judge's last known residence. See Fla.Judicial Qualifications Comm., rules 6(b) (notice of investigation and required notice); and 7(c) (notice of formal charges and required service of the notice). Rule 2.140(b), which applies to this Court's procedures in handling the JQC's recommendation, states:
(1) Promptly upon the filing of a recommendation from the Commission, the Court shall determine whether the Commission's recommendation complies with all requirements of the Constitution and the Commission's Rules. Upon determining that the recommendation so complies, *46 and unless the Court otherwise directs, an order shall issue directing the justice or judge to show cause in writing why the recommended action should not be taken.
Rule 2.140(b)(1), Fla.R.Jud.Admin. (emphasis added). Rule 2.140(b)(1) is the current version of former Florida Rule of Appellate Procedure 9.520(b)(1). The Fla. Bar Re Rules of Judicial Admin. 458 So.2d 1110, 1111 (Fla. 1984). The language of rule 2.140(b)(1) is the same as the former rule 9.520(b)(1). In the Committee Notes accompanying rule 9.520, the Committee stated that "an order to show cause will issue unless the Court determines that extraordinary circumstances require action by the Court before an opportunity for response can be provided." 32 Fla. Stat. Ann. 574 (1983). Because the language of the two rules is identical, we find that this Court has retained its discretion to act without ordering a response because of extraordinary circumstances. The seriousness of the charges contained in the grand jury indictment against the petitioners warranted a suspension of the petitioners without compensation quickly, and thus constituted extraordinary circumstances.
We also find that the petitioners had an adequate opportunity to be heard before the JQC and thus were provided due process before this Court's October 15, 1991 Order. The petitioners' decisions not to appear or submit a written answer in the JQC proceedings cannot be used as the basis of a claim for lack of due process. The law does not entitle the petitioners to a "second bite at the apple" to show cause why they should not be suspended without compensation.
We also reject the petitioners' third due process claim that the suspension without compensation violates their presumption of innocence. We find that the suspensions without compensation are based on allegations with an indicia of reliability and are needed to protect the public confidence in the judiciary's integrity, and that the suspensions do not violate the presumption of innocence.
In the past, we have required that the recommendation of suspension without compensation be supported by facts. See In re Inquiry Concerning a Judge (Leon), 440 So.2d 1267, 1270 (Fla. 1983) (holding that the JQC's finding of guilt of several charges supported the recommendation of suspension without compensation). There is only one instance where this Court has suspended a judge without compensation prior to the JQC's making its factual findings. In In re Inquiry Concerning a Judge (Smith), 347 So.2d 1024 (Fla. 1977), this Court suspended without compensation a judge who had been convicted of federal felony drug-trafficking charges. Although the petitioners have not been convicted of any crimes here, we think it is significant that a grand jury indicted them. The grand jury's indictments carry an indicia of reliability because the charges are made by an independent body that bases its findings on sworn testimony. If the allegations of the petitioners' criminal misconduct had been brought by an information or direct filing, we would have deemed it appropriate to make a probable cause inquiry before acting on the JQC recommendation to suspend the petitioners without compensation. Thus, we hold that the grand jury indictment provides probable cause that the petitioners have engaged in misconduct making them unfit to serve.
The grand jury indictment charges the petitioners with criminal misconduct that affects the public's confidence in the judiciary. The fourteen-count indictment alleges that the petitioners accepted money to influence the outcome of cases before their courts, and engaged in racketeering, extortion, and conspiracy to commit extortion, in relation to the performance of their judicial duties. In the report and recommendation to this Court, the JQC found that the petitioners effectiveness as judges had been adversely affected by public knowledge, from widely circulated news reports, of the petitioners' alleged criminal misconduct. The criminal allegations against the petitioners shake the foundation upon which a free society is built: a fair, just, and independent judiciary. As this Court noted in Cone v. Cone, 68 So.2d 886, 888 (Fla. 1953), "[t]he administration of justice is the most important business of the State. Said Emanual Comptee: `When justice is gone it is no longer important that men live on this earth.'" Few events are more egregious *47 and derogatory to the image or perception of the judiciary than for one of its members to be charged with selling its decisions.
While the instant case is one of first impression in Florida concerning a suspension without compensation prior to an evidentiary finding of misconduct, other jurisdictions have examined the issue, and held that public confidence in the judiciary warranted suspension without compensation of judges accused of misconduct. The Supreme Court of New Jersey, acting under a state statute, suspended without compensation for ninety days a judge who was arrested for accepting a bribe, in order to restore confidence the judiciary. In re Coruzzi, 472 A.2d 546, appeal dismissed, 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984). The New Jersey court stated:
[R]emoval is not punishment for a crime, nor is suspension, nor is the withholding of pay. The purpose of the removal proceedings, and all related aspects of those proceedings, is to regulate the judiciary, to protect the public from dishonest judges, to prevent proven dishonest judges from doing further damage, and above all to assure the public that the judiciary is worthy of its trust. That purpose, clearly regulatory, is achieved not only by the removal proceeding itself, but also by the immediate suspension of the judge without pay. Were pay to be resumed before the removal proceedings were completed, public confidence in the judiciary would without doubt be weakened.

Id. at 556 (emphasis added). Similarly, in In re Brennan, 483 N.E.2d 484 (N.Y. 1985), the New York Court of Appeals held that a federal indictment alleging that a judge accepted money to influence the outcome in four cases warranted a suspension without compensation. The New York court found that a grand jury's indictment supported a finding of probable cause that the judge betrayed the public trust vested in a judicial officer. The New York court, however, stressed that the issue before the court was not a question of the judge's guilt or innocence, but rather a question concerning the seriousness of the charges made against the judge. Both the New Jersey and New York courts suspended judges without compensation in order to restore confidence in the judiciary, but without questioning the judges' presumption of innocence. Likewise, this Court suspended the petitioners without compensation in order to restore the public's confidence in the judiciary's integrity, but without passing judgment on the petitioners' guilt or innocence.
We are acutely mindful that the petitioners here have only been indicted and that there abides with them a presumption of innocence until the final resolution of the charges. This Court's suspension of the petitioners without compensation does not reflect on the question of the petitioners' guilt or innocence. They remain clothed with a presumption of innocence until proven otherwise. Our decision is based on balancing the protection of the public's confidence in the judiciary and the rights of the petitioners.
Finally, we also note that the Florida Constitution and Florida Statutes authorize the suspension without compensation of public officials accused of misconduct in order to protect the public's confidence in the integrity of its government. In article IV, section 7 of the Florida Constitution, the governor is authorized to suspend from office any state officer not subject to impeachment, or any county officer for "malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony." Art. IV, § 7, Fla. Const. Suspensions without compensation have been the policy of the executive branch of this state when persons are indicted or otherwise charged with crimes. See § 112.51(4), Fla. Stat. (1989) (municipal officer suspended from office is not to receive any compensation during suspension); Id. § 112.501(6) (municipal board member suspended from office is not to receive any compensation during a suspension); Id. § 112.52(2) (elected or appointed officers not otherwise provided for by the Constitution or statute is not to receive compensation during suspension). Such suspensions, even without a hearing, have been determined not to violate the due process rights of the one suspended. Fair v. Kirk, 317 F. Supp. 12 (N.D.Fla. 1970), aff'd without opinion, 401 U.S. 928, *48 91 S.Ct. 935, 28 L.Ed.2d 210 (1971). The provisions in the Florida Constitution and the legislature's allowing of suspensions without compensation show the value Florida places on protecting the integrity of its government and its officials.
Even though the petitioners would be able to receive their deferred compensation if the JQC finds them not guilty of misconduct, we recognize that a suspension without compensation is a harsh action. Therefore, we think the JQC proceedings should be resolved in an expeditious manner. The petitioners' federal criminal trial which is scheduled for August 2, 1992, is expected to last for four months. If the JQC's inquiry has not been concluded by the trial's end, we would urge that it move with dispatch thereafter. Any undue delay in completing the inquiry will cause this Court to review the order of suspension without compensation.
The petitioners have also moved this Court to dismiss and vacate the Order of Suspension Without Compensation because of alleged discovery violations by the JQC. The petitioners have attempted to depose special agents involved in the criminal investigations which led to the grand jury indictment. In particular, the petitioners sought to depose Raymond Takiff (Takiff), a special agent who played a role in gathering the evidence which formed the basis of the grand jury indictment. Takiff appeared for a scheduled deposition, but the Assistant United States Attorney instructed him not to answer any questions. The United States Attorney's Office filed two emergency motions, one with the JQC and the other with the United States District Court Southern District of Florida, to enjoin the petitioners from deposing the federal agents. The United States Attorney's Office argued that the depositions would harm an ongoing criminal investigation.
On December 20, 1991, the federal district court denied the United States Attorney's motion to enjoin or restrict discovery in the JQC proceedings because the court found that the petitioners had complied with the federal regulations required for deposing federal agents. On February 13, 1992, the JQC granted the United States Attorney's emergency motion for a protective order enjoining petitioners from taking the depositions.
We find no justification for the JQC's order delaying the petitioners' depositions. Discovery which is not prohibited by the federal district court should not be denied by the JQC.
Accordingly, we hold that our October 15, 1991 suspension of the petitioners without compensation does not violate their due process rights because the petitioners were afforded a full and fair opportunity to be heard, and this Court's suspensions protect the public's confidence in the judiciary without harming the petitioners' presumption of innocence. Thus, we deny the petitioners' Motions to Vacate our Order suspending them without compensation. We also deny the petitioners' Motions to Dismiss the charges because of alleged discovery violations, but order the JQC to allow the discovery requests that are not prohibited by federal or Florida law.
It is so ordered.
NO MOTION FOR REHEARING WILL BE ALLOWED.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and HARDING, JJ., concur.
KOGAN, J., recused.