599 So.2d 1322 (1992)
CITY OF HIALEAH GARDENS, Appellant,
v.
JOHN L. ADAMS & CO., INC. a Florida corporation, Appellee.
No. 91-978.
District Court of Appeal of Florida, Third District.
May 5, 1992.
Rehearing Denied July 14, 1992.
Conroy, Simberg & Lewis and Robert I. Buchsbaum, Hollywood, for appellant.
Thomson, Muraro, Bohrer & Razook and Steven W. Davis and Scott A. Browdy, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and GERSTEN, JJ.
BARKDULL, Judge.
The trial court in a non-jury trial awarded the appellee, hereinafter referred to as ADAMS, $28,000.00 purportedly for breach of a contract entered into between the parties, which called for the appellee to receive "2% of project funding awards to the City, due upon notice of funding approval." The project was the widening of NW 103rd Street within the City of Hialeah Gardens. The work was ultimately done by the Department of Transportation of the State of Florida, and no public grant funds were ever awarded to the City. On the state of this record, we reverse.
The contract called for ADAMS to be paid on a hourly basis for personal time, *1323 which amounts were paid. The balance of compensation was a contingency involving the awarding of public funds. Any contract involving the use of public funds is subject to strict scrutiny, and before any public monies are paid out in compliance therewith, the exact terms of the contract must be complied with. This is particularly true where there is a contingency award.
Contracts providing for contingency awards for securing public monies, public licenses, permits, zoning, etc., have in many instances been found to be void, as against public policy. The reason for such a doctrine has been set forth in Wechsler v. Novak, 26 So.2d 884 (Fla. 1946):
"The early case of Providence Tool Co. v. Norris, 2 Wall. 45, 69 U.S. 45, 17 L.Ed. 868, involved a contract entered in between the Secretary of War and the tool company providing for the delivery of 25,000 muskets of a specified pattern for $20 each, and the muskets were to be delivered by a certain date. The contract was obtained through the exertions of Norris with an agent of the tool company, and it was agreed that if Norris would obtain the contract from the War Department then he (Norris) would receive stipulated compensation to be paid to him by the tool company. Norris brought suit and the court held that he could not recover because his contract was against public policy and therefore invalid. It was said, `agreements for compensation contingent upon success, suggest the use of sinister and corrupt means for the accomplishment of the ends desired. The law meets the suggested evil and strikes down the contract from its inception. There is no difference in principle between agreements to procure favors from legislative bodies and agreements to procure favors in the shape of contracts from the heads of departments.'" Emphasis added. Wechsler, 26 So.2d at 885.
* * * * * *
"[5] A contract involving the use of personal influence with public executives or administrative officers or the heads of departments in order to induce them to grant favors or privileges, as a general rule, is regarded as against public policy. Many courts hold such agreements invalid on the theory of their tendency to introduce corrupt means in the influencing of public officials and especially is it true in those cases where compensation is contingent on success. 17 C.J.S. Contracts § 214, page 577. See Williston on Contracts Vol. 6 (Rev.Ed.) 4876-4942, Pars. 1726-1746." Emphasis added. Wechsler, 26 So.2d at 888.
See also Stearns v. Williams, 72 Idaho 276, 240 P.2d 833 (Idaho 1952):
"[1] Whether a contract is against public policy is a question of law for the court to be determined from all the facts and circumstances of each case. Stansell v. Roach, 147 Tenn. 183, 246 S.W. 520, 29 A.L.R. 143; 17 C.J.S., Contracts, § 211(d), page 568, note 75.
[2] An agreement voluntarily made between competent persons is not lightly to be set aside on the grounds of public policy, or because it has turned out unfortunately for one party. Crimmins & Pierce [Peirce] Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 185 N.E. 383, 88 A.L.R. 1122. However, such contracts are subject to the limitation that they must not contravene public policy. Huey v. Brand, Tex.Civ.App., 92 S.W.2d 505; St. Regis Candies v. Hovas, 117 Tex. 313, 3 S.W.2d 429; Id., Tex.Civ. App., 8 S.W.2d 574; 12 Am.Jur., §§ 167 and 172, pp. 662 and 670.
[3] The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward such an evil, Wood v. Casserleigh, 30 Colo. 287, 71 P. 360; if it is opposed to the interest of the public, or has a tendency to offend public policy, it will be declared invalid, even though the parties acted in good faith and no injury to the public would result in the particular instance; the test to be applied is not what is actually done but that which may or might be done under the terms of the contract; it is the evil tendency of the *1324 contract and not its actual injury to the public that is determinative, as the law looks to its general tendency and closes the door to temptation by refusing to recognize such agreements. 17 C.J.S., Contracts, § 211, page 564, notes 42-46.[1]" Emphasis added. Stearns, 240 P.2d at 837
The focus of this court's inquiry is on the validity of the contingent fee provision of the contract's compensation clause. The contract contemplated that ADAMS would use his efforts to influence any governmental agency source into funding specifically designated City projects, and ADAMS was to be compensated at a rate of 2% of any project funding award. In other words, the total amount of the commission to be received by ADAMS was contingent on the degree of success ADAMS had in securing project funding awards to the City.
Such "contingent fee" arrangements designed to reward persons who are successful in procuring government contracts for their clients are considered contrary to public policy. Government Contracts Reporter (CCH) § 390 at 1149-12. The public policy considerations which require protection are only heightened by the fact that the client in this instance is a municipality.
A contract that contravenes an established interest of society can be found void as against public policy. American Casualty Co. v. Coastal Caisson Drill Co., 542 So.2d 957 (Fla. 1989). See also Duplig v. City of South Daytona, 195 So.2d 581 (Fla. 1st DCA 1967) (an appropriation of municipal funds, derived from taxation, for purposes wholly beyond purview of municipal grant is a wrongful appropriation of funds held in trust for taxpayers and null and void).
There is a legitimate public policy concern that such contingent fee arrangements promote the temptation to use improper means to gain success. For example, in lobbying agreements, the facts that the compensation bargained for is contingent on the procurement of favorable legislation is frequently held to be a conclusive factor in the determination that the bargain is invalid because, even though no improper means of such promotion are bargained for, there is inevitable temptation. See Williston on Contracts, Vol. 15, §§ 1727-1729. The instant contract at issue is closely analogous to those cases involving invalid lobbying agreements since there is no difference in principle between agreements to procure legislative favors and agreements to secure a governmental agency monetary funding award to a municipality. A contract to give any agent compensation dependent upon his success in procuring such funding should likewise be declared invalid as being contrary to acknowledged public policy.
The Florida Legislature explicitly recognized the danger of contingent fee contracts in the "Consultants' Competitive Negotiation Act", Fla. Stat. § 287.055. Therein, any "professional service", i.e., architects, engineers or land surveyors, entering into a contract with a municipality must warrant that he has not retained a consultant to secure the contract and that he has not agreed to pay the consultant a fee contingent upon or resulting from the award pursuant to the contract. Fla. Stat. § 287.055(6).
In Wechsler v. Novak, supra, the Florida Supreme Court, in considering the validity of a contract containing such a contingent fee arrangement, concluded that such agreements are invalid on the theory that they tend to introduce corrupt means in the influencing of public officials. Public policy concerns against such conduct is only enhanced in those cases where compensation is contingent on success.[2]Id. at 888. A similar public policy issue was at the heart of Markon v. Unicorp American Corp., 645 F. Supp. 62 (D.D.C. 1986). In *1325 Markon, it was undisputed that the plaintiff was hired to secure, through renegotiation, a new lease with the government, and that his commission was contingent on his negotiating a lease acceptable to the owner. The court unequivocally held that such contracts are contrary to federal policy and are therefore unenforceable, notwithstanding the fact that the owner may have received a benefit. Id. at 64-65.
The objective of the public policy is to eliminate improper influence, or the temptation to exert improper influence, in the obtaining of such project funding awards and to eliminate arrangements which encourage the payment of inequitable fees bearing no reasonable relationship to the services actually performed.
It may be necessary as between private parties to a contingent fee contract involving private monies, for the defense of invalidity to be raised, Robert & Co. Inc. v. Mortland, supra, but when the contingent contract is with a public entity and involves a raid on the public treasury, it should be the duty of a court at any level to raise the invalidity of the contract on its own motion to protect the interest of the public. In the instant case, if necessary to so do, we would not hesitate to raise it.[3]
For our citizens to support our institutions of government, they must have confidence in the integrity of public officials and in their actions, and among other things, they have a right to expect good faith and honest dealings in expenditure of the public treasury. As between the innocent tax paying public and those who would gain from contingent contracts with public entities or agencies, we come down on the side of the tax payer.
Although not called upon in this proceeding to declare the contract void, because it is clear that the condition of the contingency was never met, we would have no hesitation to declare it void, if necessary.[4] We therefore reverse the final judgment *1326 with directions to dismiss the complaint, because of this latter ground.[5]But we do, by this opinion, call to the attention of the Bench and Bar of the State of Florida, the concerns that we have for the awarding of contingency fees for securing benefits from government, its various agencies, departments and branches, etc.
Reversed and remanded with directions.
NOTES
[1] Compare Robert & Co. Inc. v. Mortland, 160 Fla. 125, 33 So.2d 732 (1948).
[2] See and compare City of Miami v. Benson, 63 So.2d 916 (Fla. 1953) (contract entered into between City and a corporation whereunder corporation was to act as City's fiscal agent and adviser on matters pertinent to a bond issue program, and corporation was entitled to buy such bonds, was invalid as being contrary to public policy.)
[3] See Title & Trust Co. of Florida v. Parker, 468 So.2d 520 (Fla. 1st DCA 1985). "... as a court may, on its own motion, take notice of illegal contracts coming before it Citizens Bank & Trust Co. v. Mabry, 102 Fla. 1084, 136 So. 714, 717 (1931), citing Escambia Land & Manufacturing Co. v. Ferry Pass Inspectors' & Shipper's Ass'n., 59 Fla. 239, 52 So. 715 (1910)."

* * * * * *
"[6, 7] We find additional support for our holding in the general notion that courts have an "affirmative duty" to avoid allowing a party who violates public policy to receive any substantial benefits from his or her wrongdoing. Cooper v. Paris, 413 So.2d 772, 774 (Fla. 1st DCA 1982), citing Local No. 234 v. Henley & Beckwith, Inc., 66 So.2d 818 (Fla. 1953). Thus, as a general rule, if the enforcement of a contract is contrary to the public policy of the forum state, the contract need not be enforced, Davis v. Ebsco Industries, Inc., 150 So.2d 460, 463-464 (Fla. 3d DCA 1963); Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239, 243 (Fla. 2d DCA 1973), cert. den., 285 So.2d 28 (Fla. 1973)."
See American Home Assur. Co. v. Keller Industries, 347 So.2d 767, 772 (Fla 3d DCA 1977). "We hold that in the circumstances of this case, the court was without jurisdiction, under the statute or otherwise, to enter the fee order appealed from. The error incurred thereby was fundamental in that it went to the heart of the right of recovery. Sanford v. Rubin, 237 So.2d 134, 137 (Fla. 1970). The rule that questions not presented to and ruled upon by the trial court are not reviewable on appeal is subject to the exception that an appellate court may consider and rule upon a constitutional or fundamental error when first raised, or revealed on the record on appeal. Love v. Hannah, 72 So.2d 39, 43 (Fla. 1934); Ewing v. Dupee, 104 So.2d 672 (Fla. 2d DCA 1958); Florio v. State ex rel. Epperson, 119 So.2d 305, 309 (Fla. 2d DCA 1960); In re: Kionka's Estate, 121 So.2d 644, 647 (Fla. 1960). Moreover, authority is granted to the appellate court to take note of jurisdictional or fundamental error apparent on the record by Fla.App.Rule 3.7(i), in which it is provided: * * * `the Court in the interest of justice, may notice jurisdictional or fundamental error apparent in the record-on-appeal, whether or not it has been argued in the briefs or made the subject of an assignment of error, or of an objection or exception in the court below'."
[4] Unfortunately, across our nation at this time, the public has a very low regard for the institutions of government and government officials, be they local, state or federal. This low esteem has been brought about recently, by among other things, the scandal of the federal Congress, the ongoing banking and savings and loan crises', and, political action committees, or PACs buying elections with their "war chests". Locally, in addition to the national problems, there has been problems with the so-called "lobbyists" securing favorable government action for their clients. See in this regard a recent case out of this court authored by Judge Nesbitt. Jennings v. Dade County, 589 So.2d 1337 (Fla. 3d DCA 1991). Plus we today have a local judicial scandal as a result of operation "Court Broom". See in this regard recent Supreme Court case on the suspension, without pay, of three judges. Inquiry Concerning a Judge re Harvey N. Shenberg, 17 F.L.W.S. 217, 1992 WL 63094 (Fla. 1992) (Case No. 78748, opinion filed April 2, 1992). Which judicial scandal involves four judical officers, and so far has resulted in one recently sitting circuit judge pleading guilty to conspiracy to engage in racketeering in connection with the performance of his judicial duties.
[5] In light of this ruling, the cross appeal is moot.