ANTOON, Judge.
Winthrop & Joseph, Inc. (W & J) appeals the summary final judgment entered in favor of Marriott Resort Hospitality Corporation and Marriott Ownership Resorts (Marriott). In granting final summary judgment, the trial court determined that section 112.8217, Florida Statutes (1995), barred enforcement of a contingency fee contract between W & J and Marriott because the statute prohibited “any person” from entering into a contract which provided for a fee contingent upon specific executive branch action. We reverse because section 112.3217 applies only to contracts for lobbying and, in the instant case, there was no lobbying contract between the parties.
W & J pursues ad valorem tax appeals for property owners. It entered into a contract with Marriott for such services which provided, in part, that W & J would initiate appeals of the ad valorem tax assessments of Marriott’s property located in Orange County. The appeals were to be directed to the local taxing jurisdictions up to and including the county board of review. The contract further provided that W & J would receive a fee of 30% of any tax savings or refunds achieved as a result of its efforts. Prior to W & J’s filing of an appeal with the Orange County Valuation Adjustment Board on behalf of Marriott, Marriott instructed W & J not to pursue the appeal and terminated the parties’ contract. W & J then sued Marriott for breach of contract.
Marriott moved for summary judgment, asserting that the contract was unenforceable. Having taken judicial notice of section 112.3217, the trial court granted the motion in favor of Marriott.[1] The trial court determined that the statute barred enforcement of the contract because the statute prohibited “any person” from entering into a contract which provided for a fee contingent upon specific executive branch action. W & J appeals this ruling.
Section 112.3217 provides in full:
112.3217 Contingency fees; prohibitions; penalties.-
(1) “Contingency fee” means a fee, bonus, commission, or nonmonetary benefit as compensation which is dependent or in any way contingent on the enactment, defeat, modification, or other outcome of any specific executive branch action.
(2) No person may, in whole or in part, pay, give, or receive, or agree to pay, give or receive, a contingency fee. However, this subsection does not apply to claims bills.
(3) Any person who violates this section commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. If such person is a lobbyist, the lobbyist shall forfeit any fee, bonus, commission, or profit received in violation of this section and is subject to the penalties set forth in s. 112.3215. When the fee, bonus, commission, or profit is nonmone-tary, the fair market value of the benefit shall be used in determining the amount to be forfeited. All forfeited benefits shall be *791 deposited into the Executive Branch Lobby Registration Trust Fund.
(4) This section does not apply to any contract providing for compensation by contingency fee which is in existence on the date this act becomes a law and which does not provide for compensation by contingency fee for lobbying after December 31,1993.
(5) Nothing in this section may be construed to prohibit any salesperson engaging in legitimate state business on behalf of a company from receiving compensation or commission as part of a bona fide contractual arrangement with that company.
W & J contends that section 112.3217 was enacted solely to prohibit lobbyists from contracting for fees contingent upon executive branch action.[2] W & J further contends that since it is not a lobbyist,[3] the trial court erred in applying the statute in the instant case. We agree.
Upon examination of the statute, ambiguity is readily apparent when subsections (3) and (4) are read together. Subsection (3) provides that any person who enters into a contract for a fee contingent upon the outcome of any executive branch action commits a first-degree misdemeanor. In contrast, subsection (4) specifically provides that contracts for contingency fees for lobbying services are not prohibited so long as the contracts (a) were in existence at the time the statute was enacted, and (b) did not provide for contingency fees for lobbying services performed after December 31, 1993. A fair interpretation of this subsection would be that a contingency fee contract based on the outcome of executive branch action which does not involve lobbyists or lobbying is prohibited after December 31,1993, while on the other hand such a contract which involves lobbying is not prohibited by the statute. Clearly, this is an absurd result because the legislature could not have intended to provide harsher penalties for lobbyists than for others under subsection (3) while at the same time allowing lobbyists to continue performing under contingency contracts up to December 31,1993 under subsection (4).
When a statute is unclear, the courts may look to the legislative history to resolve any ambiguity. Weber v. Dobbins, 616 So.2d 956 (Fla.1993). Furthermore, when seemingly inconsistent sections of a statute are part of the same legislative act, such sections must be construed together in order to ascertain the legislature’s intent. In re Opinion to the Governor, 60 So.2d 321, 324 (Fla.1952). In other words, statutes passed during the same legislative session and relating to the same subject matter should be construed in pari materia and harmonized so as to give effect to each. Tamiami Trail Tours v. City of Tampa, 159 Fla. 287, 31 So.2d 468 (1947).
In reviewing the legislative history of section 112.3217, the Final Bill Analysis and Economic Impact Statement states that “[t]he bill prohibits lobbyist contingency fees.” Staff of Fla. H.R. Comm, on Ethics and Elections, CS/SB 1668 (1993) Staff Analysis 4 (April 27, 1993) (on file with committee). In describing the anticipated impact of the bill, the analysis states:
The bill’s prohibition against contingency fees as an allowable term of compensation for lobbying services could have a substantial fiscal impact upon some lobbyists. The extent of the fiscal impact depends upon the amount of any contingency fee negotiated, the ‘track record’ of the lobbyist in achieving a particular legislative or executive branch action vis-a-vis receipt of the contingency fee, and reliance by the lobbyist upon contingency fee employment historically.
(emphasis added). Notably absent from the history is any reference to the anticipated impact on lawyers and other nonlobbyists who are hired to represent clients in formal administrative hearings pursuant to contingency fee contracts. In our view, the legislative history of the statute indicates a clear intent on the part of the legislature to regulate lobbyists by prohibiting them from en *792 tering into contingency fee contracts based upon the outcome of executive branch action.
Further support for this conclusion is found when reading together sections 112.3213, 112.3215, and 112.3217, Florida Statutes (1995). Section 112.3213 states in part:
Therefore, in order to preserve and maintain the integrity of the process and to better inform citizens of the efforts to influence executive branch action, the Legislature finds it necessary to require the public disclosure of the identity, expenditures, and activities of certain persons who attempt to influence the action of the executive branch in areas of policy and procurement.
(emphasis added). Section 112.3215(l)(d) defines “lobbies” as parties seeking, on the behalf of another, “to influence an agency with respect to a decision in the area of policy or procurement or an attempt to obtain the good will of an agency official or employee.” There is no indication in either of these provisions that the legislature sought to regulate any activity other than lobbying.
In addition, sections 112.3213 and 112.3217 were part of the same legislative act which was entitled, “Lobbyists.” Ch. 93-121, Laws of Florida (1993). In Florida League of Professional Lobbyists v. Meggs, No. 93-CV-40277, slip op. at 1-2 (N.D.Fla. March 31, 1995), the federal district court concluded that the act applied to lobbyists and their principals, describing the act as having “overhauled the existing law regulating lobbying before the Florida legislature and executive branch agencies.” (emphasis added).
We are convinced that, in adopting sections 112.3213, 112.3215 and 112.3217, the legislature intended to regulate lobbying and to prohibit contingency fee contracts based upon executive branch action. As a result, we construe the term “any person” in section 112.3217(3) to mean any person who is a lobbyist or the principal of a lobbyist who enters into a contingency fee contract based upon the outcome of specific branch action. If the term “any person” in section 112.3217(3) is construed otherwise, the statutory prohibition would include those specifically excluded from the definition of “lobbyist” in section 112.3215(l)(e)l-4, such as attorneys and others representing clients in judicial proceedings and formal administrative hearings or any other formal hearings before any agency, board, commission, or authority of this state, employees of agencies working in the normal course of their duties, confidential informants, and those who lobby for the procurement of contracts pursuant to Chapter 287. Accordingly, we must reverse the trial court’s summary judgment order because section 112.3217 does not prohibit W & J’s contingency fee contract with Marriott since both parties agree that they did not have a lobbying contract.[4]
REVERSED.
GRIFFIN, J., and TOMBRINK, R., Associate Judge, concur.

. Marriott had raised the issues of the common law doctrine of champerty and the violation of the public policy of the State of Florida as additional grounds for summaiy judgment. We note that the trial court properly denied relief on these grounds. The defense of champerty is not available to Marriott because the contract between the parties did not contemplate that W & J would initiate any legal action on behalf of Marriott or that W & J's fee would be contingent upon such action. See Nationwide Mutual Insurance Co. v. McNulty, 229 So.2d 585 (Fla.1969); Kraft v. Mason, 668 So.2d 679 (Fla. 4th DCA), rev. dismissed, 679 So.2d 773 (Fla.1996). Furthermore, the instant contract does not offend Florida’s public policy because it neither calls for the use of personal influence over public officials to gain favorable treatment nor the expenditure of public funds. See Wechsler v. Novak, 157 Fla. 703, 26 So.2d 884 (1946).

. The question whether seeking to lower ad valo-rem tax assessments constitutes "executive branch action” was not raised in the trial court.

. The parties agree that W & J is not a lobbyist.

. As an alternative ground to affirm the trial court’s ruling, Marriott argues that the contingency in the parties’ contract (i.e., a lower tax assessment) never occurred, and therefore, W & J is not entitled to receive compensation. This ground was not argued below and thus, cannot be addressed for the first time on appeal. See Perkins v. Scott, 554 So.2d 1220 (Fla. 2d DCA 1990).